# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| COUNTY OF EL PASO, TEXAS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No.EP-09-CV-0119-KC |
| LUTHER JONES, DAVID ESCOBAR, MARTIE JOBE, ELIZABETH "BETTI" FLORES, ROBERT BOWLING III, ROBERT BOWLING IV, SARAH J. THOMAS, GREGORY W. COLLINS, ALAN ORTEGA, CHRIS JOHNSTONE, FRANK ARROYOS, CATALINA DEVELOPMENT, INC., TROPICANA HOMES INC., CAREFREE HOMES INC., L.P., AMERICAS LOOP 375 L.P., TROFREE, LLC., CAREFREE HOMES I, TROPICANA DEVELOPMENT, INC., | § § § § § § § § § § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

1. Now comes Plaintiff, County of El Paso, by and through its attorney and files this Second Amended Complaint against Defendants Luther Jones, David Escobar, Martie Jobe, Elizabeth "Betti" Flores, Robert Bowling III, Robert Bowling IV, Sarah J. Thomas, Gregory W. Collins, Alan Ortega, Chris Johnstone, Frank Arroyos, Catalina Development, Inc., Tropicana Homes, Inc., Carefree Homes Inc., L.P., Americas Loop 375 L.P., Trofree LLC., Carefree Homes I, L.P., and Tropicana Development, Inc. .

2. All Defendants, have appeared and may be served through their counsel of record.

3. All Defendant, except for Elizabeth "Betti" Flores, have filed non-responsive pleadings. Betti Flores filed a general denial to Plaintiff's First Amended Complaint.

### Parties

4. Plaintiff, County of El Paso, is a political subdivision of the State of Texas.

5. Luther Jones is a resident of El Paso County, Texas where service of process may be had on him at 1011 N. Mesa, El Paso, Texas 79902.

6. David Escobar, individually and as Trustee for the Joint Venture composed of Carefree Homes Inc., L.P. and Tropicana Homes, Inc., is a resident of El Paso County, Texas where service of process may be had on him at 8811 Alameda, El Paso, Texas 79907.

7. Martie Jobe is a resident of El Paso County, Texas where service of process may be had on her at 100 North Stanton, Suite 1810, El Paso, Texas 79901.

8. Elizabeth "Betti" Flores (hereinafter Betti Flores) is a resident of El Paso County, Texas, where service of process may be had on her at 2816 Taylor, El Paso, Texas 79930.

9. Robert Bowling III, individually and as president of Tropicana Homes, Inc. and Tropicana Development, Inc., is a resident of El Paso County, Texas where service of process may be had on him at 4655 Cohen Avenue, El Paso Texas 79924.

10. Robert Bowling IV is a resident of El Paso County, Texas where service of process may be had on him at 5105 Timberwolf Drive, El Paso, Texas 79925.

11. Sarah J. Thomas, individually and as president of Carefree Homes Inc., L.P. and Carefree Homes I, L.P., is a resident of El Paso County, Texas where service of process may be had on her at 1560 Goodyear Drive, El Paso, Texas 79936.

12. Gregory W. Collins is a resident of El Paso County, Texas where service of process may be had on him at 1191A Wedgewood, El Paso, Texas 79925.

13. Alan V. Ortega is a resident of the state of New Mexico. Service of process may be had on him at 2012 Rancho Oro Avenue S.E., Rio Rancho, New Mexico, 87124.

14. Chris Johnstone is a resident of El Paso County, Texas where service of process may be had on him at 12140 Freight Lane, El Paso, Texas 79936.

15. Frank Arroyos is a resident of El Paso County, Texas where service of process may be had on him at 11996 Paseo Del Rey, El Paso, Texas 79936.

16. Catalina Development, Inc., is a Texas Corporation with its principal place of business in El Paso County, Texas, where service of process may be had on its registered agent, Gregory W. Collins at 1191A Wedgewood, El Paso, Texas 79925.

17. Tropicana Homes, Inc., is a Texas corporation with its principal place of business in El Paso County, Texas, where service of process may be had on its registered agent, R. L. Bowling, Jr. (a.k.a. Robert L. Bowling IV), 5105 Timberwolf Drive, El Paso, Texas 79925.

18. Carefree Homes Inc., L.P., is a Texas corporation with its principal place of business in El Paso County, Texas, where service of process may be had on its registered agent, S.J. Thomas, 1560 Goodyear Drive, El Paso, Texas 79936.

19. Americas Loop 375 L.P., is a Texas corporation with its principal place of business in El Paso County, Texas, where service of process may be had on its registered agent, Robert L. Bowling, 4655 Cohen, El Paso, Texas 79924.

20. Trofree, LLC, is a limited liability corporation operating in the state of Texas with its principal place of business in El Paso County, Texas, where service of process may be had on its registered agent, Frank Arroyos, 4655 Cohen Avenue, El Paso, Texas 79924.

21. Carefree Homes I, LP is a Texas limited partnership with its principal place of business in El Paso County, Texas, where service of process may be had on its registered agent, S.J. Thomas, 1560 Goodyear Drive, El Paso, Texas 79936.

22. Tropicana Development, Inc. is a Texas corporation with its principal place of business in El Paso County, Texas, where service of process may be had on its registered agent, R.L. Bowling III, 4655 Cohen Avenue, El Paso, Texas 79924.

**Jurisdiction and Venue**

23. This Court has jurisdiction over the parties and subject matter of this case as shown below, to include 18 USCS §1962(c) and (d), 18 USCS §1964(c), and 28 USCS §1367. Venue is proper because this district and division embrace the place where the actions that give rise to this claim took place and where the land in question is located.

**Background**

24. On July 6, 2007, former El Paso County Commissioner Betti Flores pled guilty to a six-count Federal Information (Federal Cause Number EP-06-CR-1369FM-2) charging that she "conspired and agreed together with others … to knowingly devise a scheme and artifice to defraud the County of El Paso and its citizens of the right to ELIZABETH "BETTI" FLORES' honest services in the affairs of the County of El Paso and to obtain money and property by means of material false and fraudulent pretenses, representations and promises, and in furtherance of the scheme to deprive … others known and unknown offered to pay and paid the defendant money and other benefits in exchange for her vote,

in her official capacity as an El Paso County Commissioner. See Plaintiff's Exhibit 1, INFORMATION, *United States of America v. Elizabeth "Betti" Flores*, Cause No. EP-06-CR-1369FM-2, attached hereto as if fully incorporated.

25. The illegal acts of accepting money and other benefits in exchange for her vote as El Paso County Commissioner, as admitted to by Betti Flores in counts four, five, and six of her Federal Information, are violations of Texas Penal Code §36.02, punishable by imprisonment of not more than 20 years or less than 2 years.

26. Betti Flores has not been sentenced in her federal criminal case and much of the evidence relating to the Federal Information to which she pled guilty is under federal court order seal as it relates to an on-going and well publicized public corruption investigation being handled by federal authorities.

Catalina Development

27. In count five of her Federal Information, Betti Flores pled guilty to "knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce e-mail communications, to wit: other ... offered to pay and paid the defendant money and other benefits in exchange for her vote, in her official capacity as an El Paso County Commissioner, to settle a lawsuit against the County of El Paso over a tract of land owned by the County of El Paso and to sell the land to clients of another..., and for the purpose of executing the fraudulent scheme to deprive the County and citizens of El Paso the honest services of ELIZABETH 'BETTI' FLORES" See Exhibit 1, Count Five.

28. The lawsuit referenced in count five of the Federal Information is *Catalina Development, Inc. and Gregory W. Collins v. The County of El Paso, Texas,* Cause No.

2000-559, in the County Court at Law No. Seven of El Paso County, Texas; Appeal No. 08-00-00207-CV, in the Eighth District Court of Appeals, El Paso, Texas; Appeal No. 02-0299, in the Supreme Court of Texas.

29. The tract of land relating to the settlement and subsequent sale encompasses 304.937 acres south of Vista Del Sol and east of Loop 375, within Section 16, Block 79, Township 3, T&P RR Company Surveys, El Paso County, Texas (hereinafter "tract of land").

30. The El Paso County Commissioners' Court on January 27, 1993 passed a motion providing that a 381.90-acre parcel of county land would be subject to sale by sealed bids.    Gregory W. Collins and Catalina Development, Inc. (collectively "Catalina Development") submitted a $2,554,000 bid, along with a $5,000 earnest money check. On October 1994, a majority of the Commissioners Court voted to accept Catalina Development's bid.  Before the sale was completed, two commissioners and the county judge-elect filed suit to enjoin the Commissioners Court from approving the sale and signing the deed over to Catalina Development.    On December 20, 1994, the 34th Judicial District Court issued a temporary restraining order enjoining the sale of the land.

31. The 34th Judicial District Court then issued a temporary injunction on January 4, 1995.  The Commissioners Court did not sign the property over to Catalina Development. On January 30, 1995 Gregory Collins and Catalina Development, Inc. filed suit against El Paso County for breach of contract and for specific performance for the County's non-conveyance of the parcel of land consisting of 381.90 acres in Section 16, Township 3, Block 79 of the T&P Railroad Survey.

32. The *Catalina Development* lawsuit was dismissed on El Paso County's motion for summary judgment granted on the issue of sovereign immunity on February 17, 2000. The Eighth Court of Appeals affirmed the trial court's judgment on January 11, 2002. The Texas Supreme Court affirmed the Court of Appeals' judgment on May 8, 2003.

33. The Texas Supreme Court, in affirming the Court of Appeals' judgment also rejected Catalina Development's federal question argument citing it was waived as Catalina Development failed to raise the issue at the trial court level.

34. On or about August 25, 2003, Joel Guaderrama, President, C.R. Enterprises, sought to obtain a contract with the County to act as master developer to coordinate commercial and residential development within El Paso County to provide affordable housing communities. The land sought to be developed was the land subject to the *Catalina Development* lawsuit. The Commissioners Court took no action regarding Mr. Guaderrama's proposal.

35. Joel Guaderrama continued his efforts to contract with the County up and until November, 2003.

36. In the early fall of 2003, Luther Jones, David Escobar, Betti Flores, Robert Bowling III, and Robert Bowling IV, discussed and began conspiring to defraud the County of El Paso and its citizens of the tract of land subject to the *Catalina Development* lawsuit. Frank Arroyos, acting as an agent for Carefree Homes Inc., also participated in conspiring to defraud the County of its land.

37. Frank Arroyos was twenty-five percent owner of Carefree Homes Inc., until his separation from Carefree Homes Inc., on or about August 13, 2007. Also, prior to his separation from Carefree Homes Inc., Mr. Arroyos ran Carefree Homes' day-to-day

operations and worked as the general manager of other business arms of Carefree Homes Inc.

38. Luther Jones, David Escobar, Betti Flores, Robert Bowling III, Robert Bowling IV, and Frank Arroyos had no legal interest in the property prior to their efforts to defraud the County of El Paso of its real property and honest service of Betti Flores.

39. In September or October of 2003, Robert Bowling III approached Gregory Collins regarding purchasing Collins' and Catalina Development, Inc.'s interest in the *Catalina Development* lawsuit. Robert Bowling III exclusively negotiated the assignment of interest with Gregory Collins.

40. Robert Bowling III also negotiated the terms and entered into a legal and consulting contract with Luther Jones and David Escobar on behalf of a Joint Venture composed of Carefree Homes Inc., L.P., a Texas Corporation and Tropicana Homes Inc., a Texas Corporation (Joint Venture).

41. Luther Jones and David Escobar, in accordance with the legal and consulting contract, were to acquire for the Joint Venture the tract of land from the County that was the subject of dispute in the *Catalina Development* lawsuit.

42. On November 19, 2003, David Escobar, Trustee for the Joint Venture, submitted a settlement offer as assignees of Collins and Catalina Development's interest in the *Catalina Development* litigation to attorney Steve Hughes, who was acting as counsel in the matter for the County of El Paso. The assignees offered $10,000 for each of 304 acres, plus or minus, of the tract of land along with the reimbursement to El Paso County of all fees and expenses paid by the County to its outside counsel.

43. On November 20, 2003, Gregory W. Collins and Catalina Development, Inc. assigned their interest in the *Catalina Development* lawsuit to David Escobar, Trustee for the Joint Venture. In consideration for their assignment, Collins and Catalina Development, Inc. received pursuant to a second amendment to the November 20, 2003 assignment of interest, $150,000.00 plus 15% (fifteen percent) equity interest in a joint venture to be formed by the assignees of Catalina Development Inc.; subsequently formed as Americas Loop 375, LP. The 15% (fifteen percent) equity interest was assessed by the subsequent joint venture to have a value of $1,000,000.00.

44. Americas Loop 375, LP. is a Texas limited partnership originally owned as follows[1]:

| | |
|---|---|
| General Partner: | |
| Trofree, LLC | 1.00% |
| Limited Partners: | |
| Carefree Homes I, LP. | 40.5% |
| Tropicana Development, Inc. | 40.5% |
| Gregory W. Collins (50% equity holder in Catalina Development, Inc.) | 7.50% |
| Alan Ortega (50% equity holder in Catalina Development, Inc.) | 7.50% |
| Christopher Johnstone | 3.00% |

45. Christopher Johnstone purchased his 3.0% (three percent) interest in Americas Loop 375, L.P., by contributing $200,000.00 to the partnership on or about May 4, 2004.

46. Calculating the assessed value per percentage interest indicates Americas Loop 375, LP valued the 304.937 acres at approximately $6,660,000.00 million.

47. On or about November 21, 2003, David Escobar, as agent of the Joint Venture, entered into a consulting contract with Joel Guaderrama, individually and as President of

---

[1] In December, 2008, Gregory W. Collins and Alan Ortega sold their interest in Americas Loop 375 to Tropicana Development, Inc. and Carefree Homes I, LP. Tropicana Development and Carefree Homes I are each believed to currently hold 48.5% ownership interest in Americas Loop 375.

CR Enterprises. Joel Guaderrama was to receive $100,000.00 from the Joint Venture for consulting services, contingent upon the Joint Venture's successful acquisition of the tract of land from the County.

48. On December 1, 2003, the County rejected the November 19, 2003 settlement offer submitted by David Escobar, Trustee for the Joint Venture.

49. On December 4, 2003, David Escobar submitted a second settlement offer to the County. The terms of the December 4, 2003 settlement offer are reflected in the subsequent Amended Rule 11 Agreement entered into by the County and David Escobar, Trustee for the Joint Venture, on December 22, 2003.

50. On or about December 9, 2003, prior to the Commissioners Court consideration of the second settlement offer submitted by David Escobar to the County, Luther Jones and Betti Flores met to discuss settlement of the *Catalina Development* lawsuit.

51. Prior to December 22, 2003, Luther Jones and David Escobar met with then County Commissioner Charles Scruggs in an effort to coerce Commissioner Scruggs to vote in favor of the *Catalina Development* settlement. Jones and Escobar threatened Commissioner Scruggs with adverse political consequences should he not vote in favor of settlement; Jones and Escobar threatened that Commissioner Scruggs would not be reelected.

52. On December 15, 2003, Commissioners Court considered the second settlement offer submitted by David Escobar to the County of El Paso, but took no action on the offer.

53. Betti Flores, between December 15, 2003 and December 20, 2003 requested a special session of El Paso County Commissioners Court to consider the second settlement offer submitted by David Escobar, Trustee for the Joint Venture to the County.

54. On December 22, 2003, at a special meeting of the El Paso County Commissioners Court, contrary to the legal recommendation of the El Paso County Attorney, the Commissioners Court accepted a second settlement offer submitted by David Escobar, Trustee for the Joint Venture. Betti Flores, acting in her official capacity as an El Paso County Commissioner, voted in favor of settling the *Catalina Development* lawsuit and selling the tract of land to assignees of Catalina Development.

55. On that same day, the County of El Paso entered into an Rule 11 Agreement (titled Amended Rule 11 Agreement) with David Escobar, Trustee of the Joint Venture assignees, whereby in consideration for the dismissal and release of all claims related to the tract of land and the promise not to seek a writ of certiorari from the United States Supreme Court, the County of El Paso agreed to sell a portion of the tract of land (approximately 304 acres) to the Joint Venture for $3,040,000.00 or the appraised value of the property, whichever is greater. The Joint Venture also agreed to reimburse the County for the attorney fees and court costs it had incurred in the *Catalina Development* litigation.

56. On May 24, 2004, El Paso County Judge Dolores Briones signed the warranty deed conveying 304.937 acres of land out of a 381.90 acre tract filed in Volume 2827, Page 277, of the Deed Records of El Paso County, Texas (n/k/a Tract 1-A) being a portion of Section 16, Block 79, township 3, T&P RR Company Surveys, El Paso County, Texas, to David Escobar, Trustee for a Joint Venture composed of Carefree Homes Inc., L.P. and Tropicana Homes Inc., a Texas Corporation.

57. On November 15, 2004, David Escobar, Trustee for the Joint Venture conveyed 304.937 acres to Americas Loop 375, LP. David Escobar received fees of $580,000.00 as trustee and as attorney for the Joint Venture.

58. Luther Jones also served as counsel for the Joint Venture assignees.

15-Minute Lawsuit

59. Count four of Betti Flores' Federal Information relates to a lawsuit against the County of El Paso instituted by Martie Jobe on behalf of the El Paso Sheriff Officers' Association for overtime pay, more commonly referred to as the 15-minute lawsuit.

60. On or about December 13, 2002, Martie Jobe instituted the 15-minute lawsuit against the County of El Paso. The lawsuit alleged the County was in violation of the Fair Labor Standards Act with regard to overtime pay for El Paso County Sheriff Detention Officers.

61. The 15-minute lawsuit was set for jury trial on June 20, 2005.

62. On or about December 6, 2004, Betti Flores voted in her official capacity as El Paso County Commissioner to settle the 15-minute lawsuit. The County agreed to pay plaintiffs in the 15-minute lawsuit $635,000.00 in settlement.

63. The fraudulent conspiracy and bribing of Betti Flores relating to the 15-minute lawsuit is also referenced in count three of John Travis Ketner's Federal Information. See Plaintiff's Exhibit 2 INFORMATION, *United States of America v. John Travis Ketner*, Cause No. EP-06-CR-1369FM-1, attached hereto as if fully incorporated.

FLSA 207(k)

64. On or about January 10, 2005, El Paso County Commissioners ordered the implementation of the County's rights under the Fair Labor Standards Act's 207(k) exemption provision (hereinafter 207(k)).

65. FLSA 207(k) is a federal right regarding work schedules and overtime pay for law enforcement officers.

66. The implementation of 207(k) by the County related to overtime paid to El Paso County Sheriff Deputies and Detention Officers.

67. The County had specifically noted to the El Paso County Sheriff's Officers' Association its intent to exercise its 207(k) rights. See Exhibit 3, Article of Agreement Between The County of El Paso, Texas and El Paso County Sheriff's Officers' Association, Inc., October 1, 2002 – September 30, 2007, Final, Article Eight, Section 1, pg. 9.

68. Beginning in March, 2005, El Paso County Sheriff Deputies and Detention Officers began grieving the implementation of the County's 207(k) rights.

69. Martie Jobe threatened to sue the County of El Paso for implementing its 207(k) rights.

70. On or about June, 2006, Betti Flores voted in her official capacity as El Paso County Commissioner to relinquish the County's 207(k) rights.

71. Betti Flores' vote to relinquish the County's 207(k) rights was predicated by a bribe and in furtherance of the conspiracy to defraud the County of El Paso of her honest services.

72. The scheme to defraud the County of El Paso and its citizens of the honest services of Betti Flores is also referenced in count three of Travis Ketner's Federal Information. See Exhibit 2, Count Three.

Digitization of Court Records

73. Count six of Betti Flores' Federal Information relates to a contract for digitization of court records for the El Paso County District Clerk's Office.

74. On or about November 3, 2003, El Paso County District Clerk Gilbert Sanchez requested authority from the El Paso County Commissioners Court to request for proposal (RFP) for the digitization of court records. The RFP is a request for bids from vendors seeking to procure a county contract.

75. On January 30, 2004, Martie Jobe and Luther Jones entered into a consulting services contract with Roger Miller, President of Altep.

76. Luther Jones and Martie Jobe were to work with staff and/or elected officials of the County of El Paso in representing Altep in matters related to obtaining a contract for services.

77. Jones and Jobe were to receive 1/3 of the net profits of the contract commencing from the date the contract was signed and ending 24 months thereafter.

78. The contracted entered by Jones, Jobe, and Roger Miller specifically noted that a substantial portion of the work to be performed includes consulting services related to formation and execution of public policy, as opposed to traditional legal services.

79. On or about June 7, 2004, a campaign contribution from Roger W. Miller totaling $1,000.00 was delivered to Betti Flores. The contribution was in the form of a check dated March 5, 2004. Similar contributions were delivered to other member/s of Commissioners Court.

80. On June 7, 2004, El Paso County District Clerk Gilbert Sanchez requested Commissioner Court to consider the bid proposals submitted regarding the digitization of court records.

81. On June 7, 2004, prior to the Commissioners Court consideration of bid proposals on the digitization of court records, Martie Jobe possessed the confidential bid proposals submitted to the County by vendors seeking to procure the contract.

82. El Paso County District Clerk Gilbert Sanchez admitted in open session of the June 7, 2004, El Paso County Commissioners Court meeting that Mr. Sanchez' staff member, Fernando Parra, had forwarded the confidential bid proposals to Martie Jobe.

83. Martie Jobe is a former El Paso County Commissioner. Luther Jones is a former El Paso County Attorney and County Judge.

84. On July 15, 2008, Fernando Parra plead guilty to a federal information where he admitted to conspiring to defraud the County of El Paso of "the honest services of elected members of the El Paso County Commissioner's Court" and "the defendant and others agreed to pay money, both cash and in the form of political contributions, to elected members of the El Paso County Commissioner's Court …in exchange for their support and vote in their official capacity." Mr. Parra admitted to using the United States Postal Service and a commercial interstate carrier to deliver the bid proposals and other correspondence. See Plaintiff's Exhibit 4, INFORMATION, *United States of America v. Fernando Parra*, Cause No. EP-06-CR-1369FM-9, attached hereto as if fully incorporated.

85. On October 14, 2008, the federal court ordered the filing of the redacted transcript of Betti Flores' Plea of Guilty. Within said plea, the federal court found sufficient facts

alleged to satisfy each element of each and every of the six counts of the federal information charged against former El Paso County Commissioner Betti Flores. See Plaintiff's Exhibit 5, Redacted Transcript of Betti Flores' Plea of Guilty, p.15, ln. 14-17.

## Causes of Action

### Count 1 - Civil RICO

86. Plaintiff asserts a civil Racketeering Influenced and Corrupt Organization (hereinafter "RICO") claim against Luther Jones, David Escobar, Martie Jobe, and Betti Flores and in support asserts:

87. Plaintiff alleges collectively, Defendants Jones, Escobar, Jobe, and Flores formed a consensual informal enterprise.

88. Plaintiff alleges the enterprise and its members knowingly engaged in racketeering activities in violation of 18 U.S.C. § 1962(c) and (d).

89. The enterprise, through Jones, Escobar, and Jobe, would contract with clients; individuals, businesses, or entities having or seeking to do business with El Paso County. The enterprise was to provide consulting services for these clients.

90. The purpose of the consulting services was to obtain favorable resolutions for clients doing, or seeking to do, business with the County.

91. In furtherance of the enterprises efforts, the members of the enterprise engaged in a pattern of racketeering activities over a significant course of time in a variety of episodes.

92. The enterprise and its members would obtain favorable resolution for its clients through the use of racketeering activities; specifically including but not limited to bribery as defined in Texas Penal Code §36.02(a)(1), fraud and swindles as defined in 18 U.S.C. §1341, and fraud by wire as defined in 18 U.S.C. §1343.

93. Betti Flores, agreed to and did accept bribes and other benefits in exchange for her vote as an El Paso County Commissioners. Ms. Flores would also further the enterprises efforts by obtaining and transferring confidential information to members of the enterprise via mail and wire communications in violation 18 U.S.C. §§1341 and 1343. These efforts served to defraud the County of the honest services of then El Paso County Commissioner Betti Flores.

94. Luther Jones served as the principal decision maker for the enterprise. Jones was primarily responsible for coordinating the activities of the enterprise. As described in further detail below, Luther Jones drafted and forwarded communications and instruction to other members of the enterprise via email in furtherance of the enterprises schemes to defraud the County of El Paso of its property, money, and honest services of at least one of its elected County officials for the benefit of the enterprise, its members and its clients.

95. Betti Flores, through her plea to the Federal Information cited above, admitted to conspiring with others to defraud the citizens of El Paso County of her honest services.

96. Plaintiff asserts Betti Flores conspired with Jones, Escobar, and Jobe in furtherance of the pattern of activity conducted by the enterprise.

97. Betti Flores admitted to violating 18 U.S.C. §1341 and 1343 by using the United States Postal Service and fraud by wire to further the enterprise's schemes to defraud the County of El Paso.

98. The use of the postal service and wire communication for the benefit of the enterprise affects interstate commerce; a violation of 18 USCS 1962 (c).

99. The enterprise knowingly cloaked its purpose of defrauding the County of El Paso and its citizens of the honest services of Betti Flores for the benefit of the enterprise and its clients.

100.    The enterprise's success in concealing its illegal and fraudulent activities resulted in Plaintiff not knowing or having reason to know of the racketeering activities. Plaintiff could not have been reasonably expected to investigate the concealed illegal and fraudulent activities of the enterprise until Betti Flores plead guilty to a Federal Information on June 6, 2007.

101.    The misrepresentations made by Betti Flores also cloaked the injuries sustained by the County of El Paso. Plaintiff could not have been reasonably expected to discover its injuries until Betti Flores plead guilty to the Federal Information cited above.

102.    Plaintiff has sustained economic injuries that were proximately caused by the enterprises racketeering activities. Plaintiff's injuries include the loss of money and property as further described below.

103.    The racketeering activity engaged in by the enterprise and its members were the proximate cause of the injuries sustained by the County of El Paso and its citizens.

104.    Plaintiff asserts beginning in the fall of 2003, the members of the enterprise each engaged in a pattern of racketeering activities. The activity related to a minimum of four episodes alleged by Plaintiff that include Catalina Development, 15-minute lawsuit, FLSA 207(k) and Digitization Contract.

Catalina Development

105.    Betti Flores, through her plea to the Federal Information, admitted to receiving money and other benefits in exchange for her vote as County Commissioner in the *Catalina Development* lawsuit and other county matters. See Exhibit 1, Count Five.

106.    Betti Flores pled guilty to the criminal acts of conspiracy to commit wire fraud and the deprivation of honest services in violation of 18 U.S.C. §§ 1349, 1343, and 1346. See Exhibit 1, Count Five.

107.    The enterprises activities regarding Catalina Development began in early fall, 2003.

108.    In the early fall of 2003, Luther Jones, David Escobar, and Betti Flores, each as members of and in furtherance of the enterprise, began conspiring, in violation of 18 U.S.C. §1962 (d), with Robert Bowling III, Robert Bowling IV, and Frank Arroys in a scheme to defraud the County of El Paso and its citizens of the tract of land subject to the *Catalina Development* lawsuit.

109.    In September or October, 2003, Luther Jones and David Escobar, in furtherance of the enterprise's activities, contracted to provide legal and consulting service for the Joint Venture. Jones and Escobar, acting as agents for the Joint Venture, were to secure title to the tract of land that had been subject to the *Catalina Development* lawsuit.

110.    Robert Bowling III, on behalf of the Joint Venture, negotiated the terms and entered into a legal and consulting contract with Luther Jones and David Escobar.

111.    In September or October of 2003, Robert Bowling III approached Gregory Collins regarding purchasing Collins' and Catalina Development, Inc.'s interest in the *Catalina*

*Development* lawsuit.   Robert Bowling III exclusively negotiated the assignment of interest with Gregory Collins which was finalized on or about November 20, 2003.

112.   Luther Jones and David Escobar, in accordance with the legal and consulting contract, served as agents of the Joint Venture and were to acquire the tract of land from the County that was the subject of dispute in the *Catalina Development* lawsuit.

113.   Acting as agents for the Joint Venture, David Escobar served as Trustee and attorney for the Joint Venture.   Luther Jones served as consultant and attorney for the Joint Venture.

114.   On November 19, 2003, David Escobar, Trustee and agent for the Joint Venture, submitted a settlement offer as assignees of Collins and Catalina Development's interest in the *Catalina Development* litigation to attorney Steve Hughes, who was acting as counsel in the matter for the County of El Paso.   The assignees offered $10,000 for each of 304 acres, plus or minus, of the tract of land along with the reimbursement to El Paso County of all fees and expenses paid by the County to its outside counsel.

115.   David Escobar forwarded the settlement offer in furtherance of the enterprise's efforts to acquire the tract of land from the County for the benefit of the Joint Venture. The settlement offer was forwarded by Mr. Escobar via US postal service and/or facsimile, in violation of 18 U.S.C. §1343 and/or 1341, an act which affects interstate commerce.

116.   On or about November 21, 2003, David Escobar, as agent for the Joint Venture and in furtherance of the enterprise's activities, contracted for consulting services with Joel Guaderrama, individually and as President of CR Enterprises.   Joel Guaderrama was

to receive $100,000.00 from the Joint Venture for consulting services, contingent upon the Joint Venture's successful acquisition of the tract of land from the County.

117.   Escobar's purpose in contracting with Joel Guaderrama was to eliminate competition in acquiring of the tract of land from the County for the benefit of the Joint Venture.

118.   Joel Guaderrama, had previously gone before Commissioners Court in an effort to obtain a contract with the County to develop the land that was subject to the *Catalina Development* lawsuit; the same land the Joint Venture and its agents were conspiring to obtain from the County by fraud and bribery.

119.   Joel Guaderrama, up and until the time he contracted for consulting services with David Escobar, was continuing his efforts, individually and as president of C.R. Enterprises, to obtain a contract with the County to serve as master developer for the County in the development of the tract of land that was the subject to the *Catalina Development* lawsuit.

120.   On December 1, 2003, Plaintiff rejected the November 19, 2003 settlement offer submitted by David Escobar, Trustee for a Joint Venture.

121.   On December 4, 2003, David Escobar submitted a second settlement offer to the County.   The terms of the December 4, 2003 settlement offer are reflected in the subsequent Amended Rule 11 Agreement entered into by the County and David Escobar, Trustee for the Joint Venture, on December 22, 2003.

122.   Mr. Escobar, acting as agent for the Joint Venture, knowingly misrepresented that the offer he submitted on behalf of the Joint Venture was being made in good faith as he failed to disclose the conspiracy efforts of the enterprise to defraud the County of the

tract of land.    Escobar's knowing failure to disclose material facts, coupled with his forwarding the fraudulent offer via email and/or U.S. postal service in order to further the enterprises scheme to defraud the County, evidences his direct violation of 18 U.S.C. §§ 1341, 1343, 1346, 1962(c) and (d).

123.    On or about December 9, 2003, prior to the Commissioners Court consideration of the second settlement offer submitted by David Escobar to the County, Luther Jones and Betti Flores met to discuss settlement of the *Catalina Development* lawsuit.

124.    The meeting was in furtherance of the enterprises scheme to defraud the County and to obtain the tract of land from the County for the Joint Venture.    The meeting evidences Luther Jones and Betti Flores's acts in violation of 18 U.S.C. 1962(d).

125.    Prior to December 22, 2003, Luther Jones and David Escobar met with the County Commissioner Charles Scruggs in an effort to coerce Commissioner Scruggs to vote in favor of the *Catalina Development* settlement.    Jones and Escobar threatened Commissioner Scruggs with adverse political consequences should he not vote in favor of settlement; Jones and Escobar would see that the Commissioner would not be reelected.

126.    On December 15, 2003, Commissioners Court considered the second settlement offer submitted by David Escobar to the County of El Paso, but took no action on the offer.

127.    Betti Flores requested a special session of El Paso County Commissioners Court to consider the second settlement offer submitted by David Escobar, Trustee for the Joint Venture, to the County.

128.    In setting the special session of Commissioner Court, Betti Flores acted to further the enterprises efforts to defraud the County and to obtain the tract of land.    Ms. Flores, in

submitting her request for to set a special session of Commissioners Court via email, acted in violation of 18 U.S.C. §1343.

129.    On December 22, 2003, in furtherance of the enterprise's activities, Betti Flores defrauded the County of El Paso and its citizens of her honest services and voted in favor of selling the tract of land to the Joint Venture.

130.    Betti Flores purposely withheld critical information that would likely have prevented a vote on the settlement offer. It is unlikely Commissioners Court would have taken any action to accept the settlement offer submitted by David Escobar had the Court known of bribing of at least one member of the Court, specifically Betti Flores.

131.    On December 22, 2003, at a special meeting of the El Paso County Commissioners Court, contrary to the legal recommendation of the El Paso County Attorney, the Commissioners Court accepted a second settlement offer submitted by David Escobar, Trustee for the Joint Venture. Betti Flores, acting in her official capacity as an El Paso County Commissioner, voted in favor of settling the *Catalina Development* lawsuit and selling the tract of land to assignees of Catalina Development.

132.    Prior to the vote to accept the settlement offer, Luther Jones and David Escobar appeared before Commissioners Court and made material misrepresentations to the Court in furtherance of their efforts to defraud the County. Luther Jones and David Escobar both withheld from the Commissioners Court that they had offered and Betti Flores agreed to accept money and other consideration in exchange for her vote as an El Paso County Commissioners.

133.    Luther Jones' and David Escobar's deliberate concealment of their communications and agreements with Betti Flores were done in furtherance of the enterprise's efforts to defraud the County.

134.    On that same day, the County of El Paso entered into an Rule 11 Agreement (titled Amended Rule 11 Agreement) with David Escobar, Trustee of the Joint Venture assignees, whereby the County was defrauded into agreeing to convey 304 plus or minus acres of land to the Joint Venture for less than full consideration and in violation of the sale of real property provisions as set forth sections 263.001, 263.007, and/or 263.008 Texas Local Government Code.

135.    Prior to Betti Flores voting in her official capacity as El Paso County Commissioner to settle the *Catalina Development* lawsuit and to sell the tract of land to the Joint Venture, Luther Jones and David Escobar, in violation of Texas Penal Code 36.02(a)(1), agreed to pay money and other benefits to Betti Flores in exchange for her favorable vote.

136.    Luther Jones and David Escobar also agreed to arrange for members of the Joint Venture to pay money and other benefits to Betti Flores in exchange for her favorable vote, also in violation of Texas Penal Code 36.02(a)(1).

137.    Between November, 2003, and the final conveyance of the tract of land to the Joint Venture in May, 2004, Luther Jones maintained communication with Betti Flores regarding the *Catalina Development* settlement.

138.    On or about January 16, 2004, Luther Jones sent via email to Betti Flores, in violation of 18 U.S.C. §1343, correspondence addressed to Steve Hughes, then serving as outside counsel for the County of El Paso, inquiring about the appraisal status for the

tract of land.  Luther Jones, as principal decision maker and coordinator of activities of the enterprise, instructed Betti Flores to sign the letter in her official capacity and then forward the letter to Steve Hughes.  Betti Flores was to forward the letter via facsimile.

139.    Luther Jones knowingly intended to obtain privileged attorney client information from the County  under false pretenses and in furtherance of the enterprise's efforts to defraud the County and ensure favorable resolution for the Joint Venture.

140.    Jones maintained the communication with Flores despite knowing that Ms. Flores, as a member of Commissioners Court, was represented by counsel.

141.    Jones' communications with Flores were without prior consent or knowledge of the County's counsel and in furtherance of the enterprise's activities.

142.    On or about April 8, 2004, after Betti Flores' vote to sell the tract of land to the Joint Venture but prior to the land being conveyed, Betti Flores met with Ted Houghton, a person unrelated to the *Catalina Development* or instant lawsuits, on a matter unrelated to the instant litigation.

143.    Mr. Houghton is familiar with disposition of public lands.  During the course of the meeting, Ms. Flores asked Mr. Houghton how the General Land Office for the State of Texas sells public lands.  Mr. Houghton provided Ms. Flores with an example of how subjecting land to competitive bid can garner the best value for the land.

144.    On or about April 9, 2004, in furtherance of the enterprise's activities to secure land for their clients, Luther Jones, again acting as principal decision maker and coordinator of the enterprise's activities, drafted a letter to Ted Houghton fraudulently threatening litigation as a result of his communications with Betti Flores.

145.    Luther Jones forwarded the letter via email to David Escobar, in violation of 18 U.S.C. §1343, with instructions that Escobar sign the letter and forward it to Mr. Houghton.

146.    Escobar, in furtherance of the enterprise's scheme and in violation of 18 USC § 1343, followed Jones' instruction and forwarded the signed letter to Mr. Houghton via facsimile on April 4, 2004.

147.    The efforts of Jones and Escobar to threaten Mr. Houghton with litigation were executed to insure successful completion of the enterprise's scheme to defraud the County and obtain conveyance of the tract of land and favorable resolution for the Joint Venture.

148.    The tract of land conveyed by the County to David Escobar was subsequently conveyed to the clients of the racketeering enterprise, the Joint Venture. The conveyance to the enterprise's clients was a seamless process cutting out any legitimate competitors in a scheme designed and perpetrated to avoid the competitive bidding process, as set out in section 263.007 Texas Local Government Code, and to defraud the County of El Paso and its citizens.

149.    On May 24, 2004, El Paso County Judge Dolores Briones signed the warranty deed conveying 304.937 acres of land out of a 381.90 acre tract filed in Volume 2827, Page 277, of the Deed Records of El Paso County, Texas (n/k/a Tract 1-A) being a portion of Section 16, Block 79, township 3, T&P RR Company Surveys, El Paso County, Texas, to David Escobar, Trustee for a Joint Venture composed of Carefree Homes Inc., L.P. and Tropicana Homes Inc., a Texas Corporation.

150.   On November 15, 2004, David Escobar, Trustee for the Joint Venture conveyed 304.937 acres to Americas Loop 375, LP.  David Escobar received fees of $580,000.00 as trustee and as attorney for the Joint Venture.

151.   Plaintiff asserts on or about August 26, 2004, Robert Bowling III, in violation of Tex. Penal Code §36.02(a)(1), delivered $1,000.00 to Betti Flores in the form of a campaign contribution as payment for her vote and efforts to have the County convey the tract of land to David Escobar, Trustee and agent for the Joint Venture.  Plaintiff alleges the money was payment for Flores' vote to settle the *Catalina Development* lawsuit.

152.   On this same day, Robert Bowling III also arranged for an additional $1,000.00 disguised as campaign contributions to be paid to Betti Flores as further payment for her vote to settle the *Catalina Development* lawsuit[2].

153.   On or about August 26, 2004, Robert Bowling IV delivered $500.00 to Betti Flores in the form of a campaign contribution.  Plaintiff alleges the money was payment for her vote to settle the *Catalina Development* lawsuit in violation of Tex. Penal Code §36.02(a)(1).

154.   Plaintiff alleges the Bowling's collectively paid Betti Flores $2,500.00 in exchange for her vote to settle the *Catalina Development* lawsuit and to sell the land to the Joint Venture.  The payments were arranged by Luther Jones and David Escobar in furtherance of the enterprise's scheme to defraud the County.

155.   On or about December 16, 2004, Luther Jones, in violation of Tex. Penal Code §36.02(a)(1), paid Betti Flores $2,500.00 disguised as campaign contributions as payment for her vote in settling Catalina Development and the 15-minute lawsuit.

---

[2] Contributions collectively calculated from total contributions made by family members of Robert Bowling III.

156.    On or about December 16, 2004, David Escobar, in violation of Tex. Penal Code §36.02(a)(1), paid Betti Flores $2,500.00 disguised as campaign contributions as payment for her vote in settling Catalina Development[3].

157.    In relation to the scheme to settle the *Catalina Development* lawsuit, Plaintiff asserts the payment from the Joint Venture of $3,200,000.00 plus attorney's fees was for less than the true market value of the tract of land. Plaintiff asserts the true value of the tract of land at the time of conveyance from the County was a minimum of $6,660,000.00. The payment for less than the true market value, resulting from the defrauding of the County, is the Plaintiff's injuries.

158.    Plaintiff asserts the County's injury was proximately caused by the enterprise's fraudulent and racketeering activities.

159.    As described, Luther Jones, David Escobar, and Betti Flores conspired to defraud the County of its real property.

160.    Luther Jones, David Escobar, and Betti Flores used email and facsimiles, in violation of 18 U.S.C. §1343, to forward correspondence to further the enterprise's scheme.

161.    Luther Jones, David Escobar, and Betti Flores knowingly made material false representations when appearing before El Paso County Commissioners Court when they failed to disclose that Jones and Escobar had offered, and Flores had agreed to accept, money and other benefits in exchange for her honest services and vote as an El Paso County Commissioner.

---

[3] Contributions collectively calculated from total contributions made by Mr. Escobar and members of his family.

162.    The minimum monetary injury amount sustained by Plaintiff as a result of the Catalina Development racketeering episode is $3,370,000.00 plus monies and fringe benefits paid to Betti Flores while she was engaging in activities to further the enterprise and defraud the County of El Paso and its citizens of her honest services.

<u>15-Minute Lawsuit</u>

163.    In addition to the bribe received by Betti Flores to vote to settle the *Catalina Development* lawsuit, Betti Flores plead guilty in Count Four of her Federal Information (See Exhibit 1) to conspiring and furthering "the scheme to deprive the County of El Paso and its citizens of defendant ELIZABETH 'BETTI' FLORES' honest services and to obtain money and property...in exchange for her vote to settle a lawsuit." See Exhibit 1, Count Four.

164.    Plaintiff asserts Luther Jones, Martie Jobe, and Betti Flores, individually and as members of the enterprise, conspired in violation of 18 U.S.C. §1962(c) and (d) to defraud the County into obtaining a settlement on the 15-minute lawsuit.

165.    Plaintiff alleges Martie Jobe and Luther Jones each, in violation of Texas Penal Code §36.029(a)(1), offered to pay Betti Flores money in the form of campaign contributions in exchange for her official vote as an El Paso County Commissioner.

166.    Betti Flores, who plead guilty to conspiring to accept a bribe, accepted Jones' and Jobe's offers for a bribe to vote to settle a class action lawsuit against the County of El Paso brought by members of the El Paso County Sheriff's Office regarding overtime pay. Flores' acceptance of a bribe violates section 36.02(a)(1) Texas Penal Code.

167.    Martie Jobe served as counsel for the plaintiffs in the class action suit commonly referred to as the 15-minute lawsuit.

168.    Luther Jones provided consulting services  and instruction to Martie Jobe in obtaining settlement of the 15-minute lawsuit.

169.    In early December, 2004, Luther Jones, in furtherance of the enterprise's activities, instructed Betti Flores to act against her fiduciary duty as a county official and to vote in favor of settlement of the 15-minute lawsuit for approximately $700,000. Jones, in violation of Texas Penal Code §36.02(a)(1),  offered Flores monies in the form of campaign contributions in exchange for her vote.

170.    In early December, 2004, Martie Jobe, in furtherance of the enterprise's activities and in violation of Texas Penal Code §36.02(a)(1),  offered Flores monies in the form of campaign contributions in exchange for her vote to settle the 15-minute lawsuit.

171.    Flores agreed, in violation of Texas Penal Code §36.02(a)(1), to receive money in the form of campaign contributions from Jones and Jobe in exchange for her favorable vote to settle the 15-minute lawsuit.

172.    On December 6, 2004, Betti Flores, in accordance with the enterprise's activities and the offer to bribe, acting in her official capacity as El Paso County Commissioner, voted to settle the class action lawsuit.

173.    Betti Flores, in furtherance of the enterprise's activities, defrauded the County of El Paso and its citizens of her honest services and voted in favor of settling the 15-minute lawsuit.

174.    On December 6, 2004, in voting to settle the 15-minute lawsuit, Flores made a materially false representation to the County with the intent that the County act in reliance of the misrepresentation.

175.  Betti Flores purposely withheld critical information that would likely have prevented a vote on the settlement offer.  It is unlikely Commissioners Court would have taken any action to accept the settlement offer submitted by Martie Jobe had the Court known of the bribing of at least one member of the Court, specifically Betti Flores.

176.  Flores, through her silence, knowingly misrepresented to the Commissioners Court that she was acting in good faith and in accordance with her fiduciary duty to provide honest services to the citizens of El Paso County.  Flores' deliberate concealment of the scheme to defraud the County was intended to have the County act in reliance of the misrepresentation and vote in favor of settlement.

177.  The County did rely on Flores' representation that she was acting in accordance with her official and fiduciary duties as an El Paso County Commissioner, free of outside influence and consideration.

178.  The misrepresentation was material in the Commissioners Court consideration whether to settle the 15-minute lawsuit.  The Court acted without knowledge of the material information, thus proximately causing the County's injury.

179.  Furthermore, prior to the Commissioners vote to accept the settlement offer and in furtherance of the enterprise's activities of securing settlement, Martie Jobe made a material misrepresentation to the County that she was negotiating and offering settlement in good faith.

180.  Luther Jones and Martie Jobe, both withheld from the County that they had offered, and Betti Flores agreed to accept, money and other consideration in exchange for her vote as an El Paso County Commissioners.

181.    Jones and Jobe knowingly concealed that they were conspiring with Betti Flores to defraud the County into settlement, in violation of 18 U.S.C. §1962(c) and (d).

182.    Martie Jobe, on or about December 1, 2004, in furtherance of the enterprise's activities and scheme to defraud the County, forwarded a settlement offer to the County via facsimile and/or U.S. postal service in violation of 18 U.S.C. §§1343 and/or 1341.

183.    Jobe knowingly misrepresented that the offer included all consideration for settlement as she purposely withheld Jones' and Jobe's offers to Flores to pay monies in the form of campaign contributions in exchange for her vote. Jobe further failed to disclose Flores' acceptance of the offers by Jones and Jobe. Jobe's failure to disclose critical and material information was intended to have the County act and rely on Jobe's misrepresentation.

184.    On December 6, 2004, El Paso County Commissioners, relying on the representations made by Jobe and Flores voted to settle the 15-minute lawsuit.

185.    Thereafter, on December 16, 2004, unaware of the conspiracy to defraud by Jones, Jobe, and Flores, each individually and as members of the enterprise, the County acting in reliance of the representations made by Jones, Jobe and Flores, entered a settlement agreement with the officers of the class action lawsuit against the County of El Paso.

186.    The officers were paid $635,000.00 in return for the dismissal of the lawsuit against the County.

187.    Martie Jobe received fees for obtaining a favorable settlement for the enterprise's clients. The fees were not earned by honest services as Martie Jobe and Luther Jones conspired to defraud the County of El Paso of the honest services of Betti Flores;

specifically agreeing to pay monies to Betti Flores in exchange for her favorable vote for settlement of the 15-minute lawsuit.

188.    On December 16, 2004, in violation of Texas Penal Code §36.02(a)(1), Martie Jobe paid $1,000.00 to Betti Flores in the form of campaign contributions in exchange for her official vote in settling the class action lawsuit.

189.    On or about December 16, 2004, Luther Jones, in violation of Texas Penal Code §36.02(a)(1), paid Betti Flores $2,500.00 disguised as campaign contributions as payment for her vote in settling *Catalina Development* and the 15-minute lawsuit.

190.    The vote by El Paso County Commissioners to settle the 15-minute lawsuit is void *ab initio* as it was procured by the unconscionable act of bribery.

191.    At least one County Commissioner, Betti Flores, was bribed to vote to settle the 15-minute lawsuit. Betti Flores made a materially false statement in concealing the fact that she was bribed to vote in favor of settlement. The bribery defrauded the County and its citizens of the honest services of Flores resulting in injury through loss of money.

192.    Betti Flores admitted in her Information to using the United States mails in furthering the scheme to settle the class action lawsuit. Use of the United States mails involves interstate commerce.

193.    The County relied on Betti Flores to act in accordance with her official and fiduciary duties as an El Paso County Commissioner.

194.    It is extremely unlikely that Commissioners would have voted on December 6, 2004 to settle the 15-minute lawsuit had it be known of the conspiracy against the County and the bribing of at least one county commissioner.

195.   As a proximate cause of the racketeering activities and bribery in relation to the scheme to defraud the County and it's citizens by having the El Paso County Commissioners Court pay to settle the 15-minute lawsuit, Plaintiff asserts the fraudulent settlement caused the County to sustained a minimum monetary injury of $635,000.00 plus monies and fringe benefits paid to Betti Flores while she was engaging in activities to further the enterprise and defraud the County of El Paso and its citizens of her honest services.

FLSA 207(k)

196.   Plaintiff further asserts the racketeering enterprise executed another of its pattern of activities to defraud the County of El Paso by bribing at least one County Commissioner in order to obtain the County of El Paso's waiver of its right to exercise the 207(k) provision of the Fair Labor Standards Act (FLSA).

197.   Plaintiff asserts Luther Jones, David Escobar, Martie Jobe, and Betti Flores, individually and as members of the enterprise, conspired in violation of 18 U.S.C. §1962(c) and (d) to defraud the County into relinquishing its rights to exercise the 207(k) provision of the FLSA.

198.   Plaintiff alleges Luther Jones, in furtherance of the enterprise's activities and in violation of Texas Penal Code §36.029(a)(1), offered to arrange to have free or discounted legal representation on a criminal matter provided to Betti Flores in exchange for her official vote as an El Paso County Commissioner to relinquish the County's 207(k) FLSA rights.

199.   Betti Flores accepted, in violation of section 36.02(a)(1) Texas Penal Code, Jones' offers for a bribe to vote to relinquish the County's 207(k) FLSA rights.

200.    Plaintiff asserts Luther Jones, in accordance with his role as the enterprise's principal decision maker and in furtherance of the enterprise's activities, instructed John Travis Ketner to provide free or discounted legal representation for Betti Flores on an unrelated personal criminal matter. Ketner's free or discounted legal representation of Betti Flores on her unrelated personal criminal matter was in exchange for her official vote as County Commissioner for the County of El Paso to relinquish its federal rights under the FLSA 207(k) provision.

201.    John Travis Ketner, in count 3 of the Federal Information to which he pled guilty, acknowledges a conspiracy whereby he was instructed to provide legal representation in a personal legal matter to a person the County alleges to be Betti Flores.  See Exhibit 2, pg. 12.

202.    On or about March, 2005, Martie Jobe in furtherance of the enterprise's activities and conspiracy to defraud the County, and in violation of 18 U.S.C. §1962 (c) and (d) sent written correspondence to the County, via facsimile and/or U.S. postal service, noticing the County of potential litigation regarding the County's implementation of its 207(k) rights.

203.    On or about April or May, 2005, David Escobar, in violation of 18 U.S.C. §1962 (c) and (d) and in furtherance of the criminal enterprises' conspiracy to defraud the County  and ensure Flores' favorable vote in relinquishing the County's 207(k) rights, advised Betti Flores that arrangements had been entered for a quick resolution of Flores' unrelated personal criminal matter.

204.    The arrangements described by Escobar constituted some of the consideration Flores was to receive in exchange for her vote in relinquishing the County's 207(k) rights

under FLSA and as noted in the Article of Agreement, dated October 1, 2002 thru September 30, 2007. See Exhibit 3, section 1, pg. 9.

205.    Betti Flores received the benefit of free or discounted legal services, coordinated by Jones, in exchange for her vote to relinquish Plaintiff's federal rights regarding work schedules and overtime pay for El Paso County Sheriff Deputies and Detention Officers.

206.    On or about June, 2006, Betti Flores, in furtherance of the enterprise's scheme to defraud the County, voted in favor of relinquishing the County's rights under the FLSA 207(k) provision.  Flores' vote defrauded the County of El Paso and its citizens of her honest services.

207.    In voting to relinquishing the County's rights under the FLSA 207(k) provision, Betti Flores made a materially false representation to the County by failing to disclose that she agreed to receive benefits in exchange for her favorable vote in violation of Texas Penal Code §36.029(a)(1).

208.    Betti Flores purposely withheld critical information that would likely have prevented, or at a minimum altered, a vote on whether the County would relinquish its rights under the FLSA 207(k) provision.  It is unlikely Commissioners Court would have taken any action to relinquish its 207(k) rights had the Court known the threats of litigation by Martie Jobe were coupled with Jones', Escobar's, Jobe's, and Flores' agreement to conspire and defraud the County and the bribing of at least one member of the Court, specifically Betti Flores.

209.    Flores, through her silence, knowingly misrepresented to the Commissioners Court that she was acting in good faith and in accordance with her fiduciary duty to provide honest services to the citizens of El Paso County.  Flores' deliberate concealment

of the conspiracy to defraud the County was intended to have the County act in reliance of the misrepresentation and vote in favor relinquishing its FLSA 207(k) rights.

210.    The County did rely on Flores' representation that she was acting in accordance with her official and fiduciary duties as an El Paso County Commissioner, free of outside influence and consideration.

211.    The misrepresentation was material in the Commissioners Court consideration whether to relinquish its rights.  The Court acted without knowledge of the material information, thus proximately causing the County's injury.

212.    Betti Flores, to the detriment of the County and in conflict with her oath to provide honest services, acted to purposely conceal the racketeering activities of the enterprise.

213.    In relation to the conspiracy to defraud the County and it's citizens by having the El Paso County Commissioners Court waive it right to exercise the 207(k) provision under the FLSA, Plaintiff asserts the County's minimum monetary injury resulting from the 207(k) racketeering episode is $2,220,000.00 plus monies and fringe benefits paid to Betti Flores while she was engaging in activities to further the enterprise and defraud the County of El Paso and its citizens of her honest services.  The $2,220,000.00 is arrived from the extra pay received by Sheriff's deputies and detention officers received from June, 2006 through October, 2007.

Digitization Contract

214.    Betti Flores plead guilty in count six of her Federal Information to conspiring and agreeing to obtain money disguised as campaign contributions in exchange for her vote to secure a contract for digitization of court records.  Additionally, in furtherance of the

conspiracy, Flores pled guilty to causing to be sent via United States Postal Service bid proposals to other co-conspirators. See Exhibit 1, Count Six.

215.    Plaintiff asserts a fourth racketeering episode was executed by the enterprise in its pattern of activities to defraud the County of El Paso by bribing of at least one County Commissioner so as to obtain a contract for the digitization of court records from the County of El Paso.

216.    Plaintiff asserts Luther Jones, Martie Jobe, and Betti Flores, in violation of 18 U.S.C. §1962(c) and (d), conspired to have Betti Flores receive monies in exchange for her official vote to secure a contract for the digitization of court records.

217.    On or about January 30, 2004, Luther Jones and Martie Jobe entered into a consulting contract with Roger Miller, President of Altep.

218.    Altep, a client of the enterprise, was a company attempting to do business with the County of El Paso.

219.    Roger Miller agreed to pay fees to Jones and Jobe for securing a county contract for the digitization of court records.

220.    Plaintiff alleges Roger Miller also agreed to pay Betti Flores monies in the form of campaign contributions in exchange for her favorable vote in awarding the digitization contract.

221.    Plaintiff asserts on or about March, 2004, Jones and Jobe, in violation of section 36.02(a)(1) Texas Penal Code, offered to arrange to have monies paid to Flores in the form of campaign contributions in exchange for her official vote in awarding the digitization contract to Altep.

222.    On or about March, 2004 Betti Flores, in violation of section 36.02(a)(1) Texas Penal Code, agreed to accept monies in the form of campaign contributions in exchange for her official vote in awarding the digitization contract to Altep.

223.    On or about May 23, 2004, Luther Jones, in violation of 18 U.S.C. §1343 and in furtherance of the conspiracy to defraud the County of Flores' honest services and to obtain the awarding of the digitization contract for Altep, caused to be sent an electronic message requesting the District Clerk to submit an agenda item with the El Paso County Commissioners Court regarding the digitization contract.

224.    The use of electronic mail affects interstate commerce.

225.    Luther Jones and Martie Jobe, in furtherance of the enterprise's activities and conspiracy, arranged for Betti Flores to receive monies on June 7, 2004, in the form of campaign contributions in exchange for her agreement to favorably vote to award the county's digitization contract to Altep.

226.    On or about June, 2004, in furtherance of the conspiracy to defraud the County in obtaining the awarding of the digitization contract for Altep, Martie Jobe unlawfully conspired to secure confidential bid proposals submitted to the County. Jobe obtained the confidential bid proposals for the benefit of the enterprise's client, Altep.

227.    Martie Jobe, in furtherance of the enterprise's activities and in violation of 18 U.S.C. §1962 (c) and (d), obtained the confidential bid proposals through the use of interstate commerce; specifically via United States mail in violation of 18 U.S.C. §1341.

228.    Martie Jobe, as a former member of El Paso County Commissioners Court, has knowledge of Texas Purchasing Act provisions as laid out in chapter 262 Texas Local Government Code.

229.    Luther Jones, as former El Paso County Attorney and County Judge has knowledge of Texas Purchasing Act provisions as laid out in chapter 262 Texas Local Government Code.

230.    In conspiring to defraud the County in securing the digitization contract for Altep, Jones and Jobe, through Fernando Parra, were seeking an unfair advantage in bidding by circumventing the fair bidding procedures as required in section 262.0225 Texas Local Government Code.

231.    . On June 7, 2004, Martie Jobe, while in the commissioner's courtroom and immediately prior to Commissioners Court consideration in awarding of the digitization contract, was discovered possessing the confidential bid proposals submitted by the vendors seeking to obtain the contract.

232.    On June 7, 2004, Betti Flores made materially false representations to the County by concealing her agreement to accept monies in exchange for her vote to secure the digitization contract for the racketeering enterprise's client.

233.    On July 15, 2008, Fernando Parra plead guilty in his Federal Information to conspiring to defraud the County and to using the United States Postal Service and commercial interstate carrier to send and deliver the confidential bid proposals in violation of 18 U.S.C.§§1349, 1346, and 1341 . See Exhibit 4, Count One

234.    Plaintiff's injuries in the digitization matter are limited to the loss of money paid to Betti Flores in form of salary and fringe benefits during the course of time for which Flores was depriving the County of El Paso of her honest services.

235.    Plaintiff asserts Betti Flores' admissions to her direct involvement in conspiring with others to defraud the citizens of her honest services amounts to a criminal enterprise.

Flores' multiple counts within the Federal Information constitute a pattern of racketeering activity perpetrated by her and her co-conspirators.

236.    Plaintiff asserts damages against Betti Flores and her co-conspirators to be trebled as permitted per section 18 USCS § 1964. Additionally, Plaintiff asserts damages of any monies and benefits paid to Betti Flores as compensation for her services as El Paso County Commissioner during the time Betti Flores was conspiring with her co-conspirators to defraud the County of El Paso and its citizens of her honest services.

237.    Plaintiff contends the allegations set forth in its Civil RICO complaint will garner additional evidentiary support through the course of discovery and the unsealing of records and documents currently under federal court seal in cause numbers EP-06-CR-1369FM-1 (United States v. John Travis Ketner), EP-06-CR-1369FM-2 (United States v. Elizabeth "Betti" Flores), and EP-06-CR-1369FM-9 (United States v. Fernando Parra).

## Count 2 - Civil Conspiracy

238.    In the alternative, and without waiving its claim for civil RICO violations, Plaintiff asserts that Betti Flores perpetrated a fraud against, and breached her fiduciary duty to, El Paso County and its citizens by conspiring to defraud the County and its citizens of her honest services in the affairs of the County of El Paso. Betti Flores' plea of guilty to the federal information evidences her fraudulent acts, and the fraudulent acts of others, as violations of the common law tort of civil conspiracy.

239.    Betti Flores conspired with "others" to accomplish the object of defrauding the County of her honest services. Plaintiff alleges Luther Jones, David Escobar, Betti Flores, Robert Bowling III, individually and acting as an officer and agent for Tropicana Homes, Inc., Robert Bowling IV, individually acting as an officer and agent for

Tropicana Homes, Inc., and Frank Arroyos, acting as agent for Carefree Homes, Inc. conspired to defraud the County of Betti Flores' honest services and to defraud the County of its land.

240.    In the early fall of 2003, Robert Bowling III and Robert Bowling IV, individually and acting as officers and agents for Tropicana Homes, Inc, along with Frank Arroyos, acting as officer and agent for Carefree Homes, Inc., agreed to retain Luther Jones and David Escobar as agents for the Joint Venture.

241.    Luther Jones and David Escobar, as agents for the Joint Venture, were to obtain for the Joint Venture title to the tract of land that was the subject to the *Catalina Development* lawsuit.

242.    On November 19, 2003, David Escobar, Trustee for the Joint Venture, submitted a settlement offer as assignee of Collins' and Catalina Development's interest in the *Catalina Development* litigation to the County of El Paso.

243.    Between November 19, 2003 and December 22, 2003, Betti Flores agreed to receive monies and other benefits from Luther Jones and David Escobar. Luther Jones and David Escobar each paid Betti Flores $2,500.00 in the form of campaign contributions on or about December 16, 2004, in exchange for her vote settle the *Catalina Development* lawsuit and to sell the land to David Escobar, Trustee for the assignee Joint Venture[4].

244.    Luther Jones further offered to arrange to have the members of the Joint Venture make campaign contributions or provide other benefits to Betti Flores in exchange for the

---

[4] Plaintiff asserts the $2,500 campaign contribution paid by Luther Jones and David Escobar were in exchange for vote to settle the *Catalina Development* and 15-minute lawsuits.

vote to settle the *Catalina Development* lawsuit and sell the land to the assignee Joint Venture.

245.    On or about November or December, 2003 Flores agreed to receive monies and/or benefits from Robert Bowling III, and Robert Bowling IV, who were acting individually and as officers and agent for the Joint Venture, in exchange for Flores' vote in her official capacity to settle the *Catalina Development* lawsuit and to sell the tract of land to the assignee Joint Venture.

246.    Plaintiff asserts on or about August 26, 2004, Robert Bowling III, in violation of Tex. Penal Code §36.02(a)(1), delivered $1,000.00 to Betti Flores in the form of a campaign contribution as payment for her vote and efforts to have the County convey the tract of land to David Escobar, Trustee and agent for the Joint Venture.

247.    On this same day, Robert Bowling III also arranged for an additional $1,000.00 disguised as campaign contributions to be paid to Betti Flores as further payment for her vote to settle the *Catalina Development* lawsuit[5].

248.    On or about August 26, 2004, Robert Bowling IV delivered $500.00 to Betti Flores in the form of a campaign contribution.  Plaintiff alleges the money was payment for her vote to settle the *Catalina Development* lawsuit in violation of Tex. Penal Code §36.02(a)(1).

249.    Plaintiff alleges, collectively, the Bowlings paid Betti Flores $2,500.00 in exchange for her vote to settle the *Catalina Development* lawsuit and to sell the land to the Joint Venture.

---

[5] Contributions collectively calculated from total contributions made by family members of Robert Bowling III.

250.    Betti Flores, in her official capacity as a member of the El Paso County Commissioners Court, was a party to the *Catalina Development* litigation. As such, Betti Flores was represented by counsel, the El Paso County Attorney as well as Steve Hughes, outside counsel retained by the County.

251.    Between November 19, 2003 and the final conveyance of the tract of land to the Joint Venture on or about May 24, 2004, Luther Jones and David Escobar, in furtherance of the conspiracy to defraud the County of El Paso of Betti Flores' honest services, and contrary to Rule 4.02 Texas Disciplinary Rule of Professional Conduct, communicated with Betti Flores regarding the *Catalina Development* lawsuit.

252.    Luther Jones and David Escobar communicated with Betti Flores so as to provide her with instructions to insure favorable resolution of the conspiracy to defraud the County of its property and of the honest services of Betti Flores..

253.    While attempting to "settle" the *Catalina Development* litigation, Luther Jones and David Escobar also communicated with El Paso County Commissioner Charles Scruggs, and possibly other members of the Commissioners Court.    These communications by Luther Jones and David Escobar were without the consent or knowledge of counsel for the County.

254.    On or about November 21, 2003, David Escobar, as agent for the Joint Venture and in furtherance of the conspiracy to defraud the County of its property and of the honest services of Betti Flores, contracted for consulting services with Joel Guaderrama, individually and as President of CR Enterprises.    Joel Guaderrama was to receive $100,000.00 from the Joint Venture for consulting services, contingent upon the Joint Venture's successful acquisition of the tract of land from the County.

255.    Escobar's purpose in contracting with Joel Guaderrama was to eliminate competition in acquiring of the tract of land from the County for the benefit of the Joint Venture.

256.    Joel Guaderrama, had previously gone before Commissioners Court in an effort to obtain a contract with the County to develop the land that was subject to the *Catalina Development* lawsuit; the same land the Joint Venture and its agents were conspiring to obtain from the County by fraud and bribery.

257.    Joel Guaderrama, up and until the time he contracted for consulting services with David Escobar, was continuing his efforts, individually and as president of C.R. Enterprises, to obtain a contract with the County to serve as master developer for the County in the development of the tract of land that was the subject to the *Catalina Development* lawsuit.

258.    Luther Jones subsequently in 2004 delivered to Joel Guaderrama two payments of $50,000.00 each. Frank Arroyos, as agent for Carefree Homes Inc., arranged to have the $100,000.00 deposited in Luther Jones IOLTA trust account for payment to Mr. Guaderrama.

259.    On December 22, 2003, Betti Flores, in furtherance of the conspiracy to defraud the County of her honest services and property, as an agent for the County of El Paso acting in her official capacity, made a false and material representation to the County of El Paso regarding the *Catalina Development* settlement and sale of land. Betti Flores withheld the material fact that she had agreed to accept a bribe/s from Luther Jones, David Escobar, Robert Bowling III, and Robert Bowling IV, in exchange for her vote to settle the *Catalina Development* lawsuit and to sell the land to the Joint Venture.

260.   Betti Flores' representation to the County of El Paso was material as she was one of the voting members of the El Paso County Commissioner Court, charged with fair dealings and providing honest services in her official capacity as a duly elected El Paso County Commissioner.

261.   Betti Flores knew that the settlement offer and sale of land was not being considered objectively due to the bribe. Ms. Flores' representation as being an objective El Paso County Commissioner was false and predicated on bribery in furtherance of the conspiracy to defraud the County.

262.   Ms. Flores' silence and failure to disclose material facts constituted an affirmative misrepresentation against the citizens of the County of El Paso.

263.   Flores knowingly made the materially false representation to support her fraudulent vote in favor of settlement and the sale of the land to Defendants David Escobar and the Joint Venture, with the intent that her vote result in settlement. As stated, her conduct was predicated on the bribery and in furtherance of the conspiracy to defraud the County.

264.   The County of El Paso relied on the services of its agent, County Commissioner Betti Flores, in voting on the settlement and the sale of land, to be done without any misconduct on her part. Commissioner Flores desired to cause the consequences of her act which resulted in the settlement and sale of land to the Defendants, or at a minimum believed the consequences were substantially certain to occur.

265.   El Paso County further relied that Betti Flores' consideration of the settlement was done in good faith and without fraudulent dealings and/or bribery. El Paso County entered into the agreement relying on the inducements provided through Commissioner

Flores' vote for the settlement and sale of land. El Paso County justifiably relied upon Commissioner Flores' representations.

266.    On December 22, 2003, in furtherance of the conspiracy to defraud the County, Luther Jones and David Escobar, acting as agents of and for the Joint Venture, concealed and/or failed to disclose that they had agreed to bribe at least one Commissioner, specifically Betti Flores, in exchange for her vote regarding the settlement and sale.

267.    Jones and Escobar also knowingly failed to disclose the material fact that they arranged for members of the Joint Venture to pay monies in the form of campaign contributions, and other benefits, to Betti Flores in exchange for her vote to settle the *Catalina Development* lawsuit and to the sell the land to the Joint Venture.

268.    Due to Luther Jones' and David Escobar's concealing and/or failing to disclose material facts to the County, the County did not have an equal opportunity to discover the truth that Defendants had agreed to bribe Betti Flores.

269.    Luther Jones' and David Escobar's deliberate silence on December 22, 2003, in relation to the bribing of Betti Flores, caused the County to rely on the omission or concealment of the bribe to its detriment and injury.

270.    An additional act of material misrepresentation by Luther Jones occurred on or about January 16, 2004, when Jones sent via email to Betti Flores, in violation of 18 U.S.C. §1343, correspondence addressed to Steve Hughes, then serving as outside counsel for the County of El Paso, inquiring about the appraisal status for the tract of land. Luther Jones instructed Betti Flores to sign the letter in her official capacity and then forward the letter to Steve Hughes.

271.    Luther Jones knowingly intended to obtain privileged attorney client information from the County under false pretenses and in furtherance of the conspiracy to defraud the County and ensure favorable resolution for the Joint Venture.  By having Betti Flores forward the letter to Steve Hughes, Jones knowingly and fraudulently intended to have Mr. Hughes and the County relay on Flores' request as being for a legitimate County purpose instead of the fraudulent efforts to defraud the County of El Paso.  Hughes was to provide Flores, who in turn would provide Jones with confidential attorney client information.

272.    Jones maintained the communication with Flores despite knowing that Ms. Flores, as a member of Commissioners Court, was represented by counsel.

273.    Jones' communications with Flores were without prior consent or knowledge of the County's counsel and in furtherance of the enterprise's activities

274.    The Joint Venture was the assignee of the *Catalina Development* lawsuit from Greg Collins and Catalina Development, Inc..

275.    The Joint Venture assignees were the clients of David Escobar and Luther Jones and benefited from the settlement of *Catalina Development*.

276.    The County of El Paso did in fact sell the tract of land that was the subject to the *Catalina Development* lawsuit to David Escobar, Trustee to a Joint Venture.  The offer and acceptance of money in exchange for Flores' vote in her official capacity was an unlawful and overt act to which Flores pled guilty.

277.    The loss of the land is the County's damages that were proximately caused by the County selling the land under fraudulent pretenses.  The deliberate circumvention of a legitimate competitive bidding process open to the public, as outlined in sections

263.001, 263.007 and/or 263.008 Texas Local Government Code, resulted in the land selling for less than it true market value; a value assigned by the Joint Venture to be at least $6.66 million.

### Count 3 - Unjust Enrichment

278.    In the alternative and without waiving its claim for civil RICO or Civil Conspiracy, Plaintiff seeks equitable relief, pursuant to the doctrine of unjust enrichment, from the sale of County land that resulted from the fraudulent acts of Luther Jones, David Escobar, Betti Flores, Robert Bowling III, individually and acting as an officer and agent for Tropicana Homes, Inc., Americas Loop 375 L.P., Trofree, LLC, and Tropicana Development, Inc., Robert Bowling IV, individually and acting as an officer and agent for Tropicana Homes, Inc., and Frank Arroyos, individually and acting as agent for Carefree Homes I and Carefree Homes Inc.. The fraud perpetrated against the County to specifically include the bribing of Betti Flores so as to fraudulently procure a favorable vote to settle the *Catalina Development* lawsuit and to sell the land to the Joint Venture.

279.    Plaintiff would show the Court that the price fixed and other consideration given for the sale of the 304.937 acre tract of land was approximately $3,300,000.00. Plaintiff would show that at the time the land was conveyed, Defendants Tropicana Homes and Carefree Homes Inc., L.P., assignees of the *Catalina Development* lawsuit, valued the land at approximately $6.66 million.

280.    Robert Bowling III, Robert Bowling IV, Tropicana Homes Inc., Sarah J. Thomas, Carefree Homes Inc., L.P., Americas Loop 375, LP and its current and/or former members or interest holders, Trofree, LLC, Carefree Homes I, Tropicana Development, Inc., Gregory W. Collins, Alan V. Ortega, Frank Arroyos, and Christopher Johnstone

(hereinafter Unjust Enrichment Defendants) have unjustly benefited from the fraudulent acts of Betti Flores, Luther Jones, and David Escobar in inducing the sale of County land to the Joint Venture.

281.    Luther Jones served as agent and counsel for the Joint Venture.

282.    David Escobar served as agent, counsel and trustee for the Joint Venture.

283.    Each of the Unjust Enrichment Defendants obtained an interest in the tract of land at reduced consideration as a result of the bribing of Betti Flores to vote in her official capacity as a member of El Paso County Commissioners Court to settle the *Catalina Development* lawsuit and to sell the land to the Joint Venture.

284.    On December 4, 2003, David Escobar, Trustee for the Joint Venture, submitted an offer of settlement (second settlement offer) regarding the *Catalina Development* lawsuit. The terms of the December 4, 2003 settlement offer are reflected in the subsequent Amended Rule 11 Agreement entered into by the County and David Escobar, Trustee for the Joint Venture, on December 22, 2003.

285.    Mr. Escobar, acting as agent for the Joint Venture, knowingly misrepresented that the offer he submitted to the County on behalf of the Joint Venture was being made in good faith as he failed to disclose the fraudulent and criminal efforts to defraud the County of the tract of land.   Mr. Escobar knowingly failed to disclose the material facts that he and Luther Jones had offered, and Betti Flores agreed, in violation of Texas Penal Code §36.02(a)(1), to accept money and other consideration in exchange for her vote as an El Paso County Commissioners to settle the *Catalina Development* lawsuit and sell the land to the Joint Venture.

286.    On or about December 9, 2003, prior to the Commissioners Court consideration of the second settlement offer submitted by David Escobar to the County, Luther Jones and Betti Flores met to discuss settlement of the *Catalina Development* lawsuit.

287.    Luther Jones, an agent of the Joint Venture, knew Ms. Flores, as an El Paso County Commissioner, was represented by counsel. The meeting between Jones and Flores was in furtherance of efforts to defraud the County in obtaining the tract of land from the County for the Joint Venture and was done without the consent or knowledge of the County.

288.    On December 15, 2003, Commissioners Court considered the second settlement offer submitted by David Escobar to the County of El Paso but took no action on the offer.

289.    Between December 15, 2003 and December 22, 2003, Betti Flores requested a special session of El Paso County Commissioners Court to consider the second settlement offer submitted by David Escobar, Trustee for the Joint Venture, to the County.

290.    In setting the special session of Commissioner Court, Betti Flores acted to further the efforts to defraud the County and to obtain the tract of land for the Joint Venture. In submitting her written request for the special session, Betti Flores knowingly misrepresented that the agenda item was for a legitimate governmental purpose and was to be considered in good faith as she failed to report her agreement to accept a bribe from Luther Jones and David Escobar to vote to settle the *Catalina Development* lawsuit.

291.    The County relied on Betti Flores' misrepresentation by setting a special session of Commissioners Court for December 22, 2003.

292.    The County could not have considered the second settlement offer nor been defraud by Jones, Escobar, and Flores on December 22, 2003 had it not relied on Flores' request for a special session being made in good faith and in accordance with her fiduciary duty to the County.

293.    On December 22, 2003, in furtherance of the conspiracy, Betti Flores defrauded the County of El Paso and its citizens of her honest services and voted in favor of settling the *Catalina Development* lawsuit and to sell the tract of land to the Joint Venture.

294.    Betti Flores did not vote with consideration of fiduciary duty and in accordance with the public trust but instead voted in accordance with her agreement with Luther Jones and David Escobar whereby she was to receive monies in the form of campaign contributions from Jones and Escobar in exchange for her official vote.

295.    Betti Flores, acting in her official capacity as an El Paso County Commissioner, made false and material representations to the County of El Paso regarding the *Catalina Development* settlement and sale of land.

296.    Betti Flores purposely withheld critical information that would very likely have prevented a vote on the settlement offer. Flores withheld information regarding the bribe she was offered and agreed to accept. Additionally, Flores failed to disclose to the Commissioners Court information regarding the fraud being committed against by herself, Jones, and Escobar for the benefit of the Joint Venture and subsequently for the Unjust Enrichment Defendants.

297.    Betti Flores' silence and failure to disclose material facts, as she had a fiduciary duty to disclose, constituted an affirmative misrepresentation against the County of El Paso and its citizens.

298.    Additionally, Flores knowingly made the representation to support her fraudulent vote in favor of settlement with the intent that her vote result in settlement. As stated, Flores' conduct was predicated on the bribery.

299.    The County relied on Flores' action being in accordance with her fiduciary duty to the County and its citizens.

300.    It is extremely unlikely Commissioners Court would have taken any action to accept the settlement offer submitted by David Escobar had the Court known of the bribing of at least one member of the Court, specifically Betti Flores.

301.    Prior to the vote to accept the settlement offer, Luther Jones and David Escobar, acting as agents for the Joint Venture, appeared before Commissioners Court and made material misrepresentations to the Court in furtherance of their efforts to defraud the County. Luther Jones and David Escobar both argued in favor of settling the *Catalina Development* lawsuit citing public policy reasons while at the same time knowingly and purposely withholding from the Commissioners Court information that they had offered and Betti Flores agreed, in violation of Texas Penal Code 36.02(a)(1), to accept money and other consideration in exchange for her vote as an El Paso County Commissioners.

302.    Jones and Escobar additionally made material misrepresentations to the Commissioners Court in failing to disclose that Jones and Escobar had also agreed to arrange for members of the Joint Venture to pay money and other benefits to Betti Flores in exchange for her favorable vote, also in violation of Texas Penal Code 36.02(a)(1)

303.    Luther Jones' and David Escobar's deliberate concealment of their communications and agreements with Betti Flores was done in furtherance of their efforts, individually and as agents for the Joint Venture, to defraud the County.

304.    Jones and Escobar knowingly withheld and misrepresented material information with the intent that the County rely and act on the false misrepresentation.

305.    Jones, Escobar and Flores each knew the settlement offer and sale of land was not being considered objectively due to the bribing of Betti Flores and possibly other members of the Commissioners Court.

306.    The County, acting in reliance that the representations made by Jones, Escobar, and Flores were in good faith,  entered into an Rule 11 Agreement (titled Amended Rule 11 Agreement) with David Escobar, Trustee of the Joint Venture assignees, whereby the County was defrauded into agreeing to settling the *Catalina Development* lawsuit and to convey 304 plus or minus acres of land to the Joint Venture for less than full consideration and in violation of the sale of real property provisions as set forth sections 263.001, 263.007, and/or 263.008 Texas Local Government Code.

307.    The actions of Jones, Escobar, Flores in obtain the fraudulent sale of land from the County was the proximate cause to the injury to the County.

308.    The vote to settle the *Catalina Development* lawsuit on December 22, 2003 was procured by fraud and as such is void.  The subsequent Amended Rule 11 Agreement upon which the sale of land was executed is therefore void *ab initio* and, as such, no contract exists between the parties.

309.    The Unjust Enrichment Defendants have been unjustly enriched through the acquisition of the land from the County for less than its true value.

310.    The Unjust Enrichment Defendants' interest in the Joint Venture, or subsequent formation of Americas Loop 375, benefited through the value of land conveyed by the County having a true value much greater than the consideration provided.

311.    As stated, Americas Loop 375 valued the land at a minimum of $6,660,000.00 while consideration paid to the County was slightly less than $3,300,000.00

312.    The Unjust Enrichment Defendants benefited from the fraudulent acts of Luther Jones, David Escobar, and Betti Flores. The fraudulent acts resulted in circumventing the normal processes for public sale of County land and avoidance of competition in the acquisition of land, thereby allowing the Unjust Enrichment Defendants to acquire an interest in land for less than its true market value.

313.    The Unjust Enrichment Defendants, individually and collectively, are not entitled to the benefits because these same members, aside from Christopher Johnstone, had an equity interest in the Joint Venture composed of Tropicana Homes, Inc. and Carefree Homes Inc., L.P., to which the County was fraudulently induced into selling the tract of land due to the unconscionable acts of Defendant Betti Flores and others.

### Damages

314.    The Plaintiff asserts that it has been damaged by the fraudulent acts that unconscionably coerced the sale of County land, resulting in the unjust enrichment of the Defendants Robert Bowling III, Robert Bowling IV, Tropicana Homes Inc., a Texas Corporation, Sarah J. Thomas, Carefree Homes Inc., L.P., Americas Loop 375 and its current and/or former members, and for which Plaintiff seeks adequate compensation.

315.    Plaintiff, however, contends any profits obtained by the Defendants Robert Bowling III, Robert Bowling IV, Tropicana Homes Inc., a Texas Corporation, Sarah J. Thomas, Carefree Homes Inc., L.P., Americas Loop 375 and its current and/or former members from the sale to innocent purchasers should be surrendered to Plaintiff as exemplary damages resulting from fraudulent acts and as a matter of public interest.

316.    Plaintiff seeks restitution of money and benefits paid to Betti Flores during the term for which she was defrauding the County of El Paso and its citizens of the right to her honest services in the affairs of the County of El Paso. Plaintiff asserts Defendant Betti Flores breached her oath of office to which a claim may be adjudged.

### Attorney Fees and Costs

317.    Plaintiff seeks attorney's fees and costs pursuant to 18 USCS § 1964(c) and any other applicable statute or law.

### Jury Demand

318.    Plaintiff demands a trial by jury in accordance with Federal Rule of Civil Procedure 38 and any other applicable statute or law.

### Prayer

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff County of El Paso respectfully prays that the Court order Defendants to be cited and appear herein, and that upon final trial of this case, that Plaintiff have judgment against Defendants for the damages as set forth above, plus applicable pre-judgment and post-judgment interest as provided by law, and that the Court grant to Plaintiff a judgment for costs, and such other and further relief, general and special, legal and equitable, to which Plaintiff may be justly entitled.

Respectfully submitted,

**JOSE R. RODRIGUEZ**
**EL PASO COUNTY ATTORNEY**
500 E. San Antonio, Room 503
El Paso, Texas 79901
Office: (915) 546-2050
Fax :   (915) 546-2133


 /s/ Manuel Romero
MANUEL ROMERO
Assistant County Attorney
SBN: 24041817


 /s/ Ralph E. Girvin, Jr.
RALPH E. GIRVIN
Assistant County Attorney
SBN: 00795376

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was filed electronically and sent via  electronic transmission to: **Bryan Hall**, 5915 Silver Springs Dr., Bldg. 4, El Paso, Texas 79912; **Ken Coffman**, 320 Texas, 2nd Floor, El Paso, Texas 79901; **Larry A. Baskind**, 300 E. Main, Suite 908, El Paso, Texas 79901; **John P. Mobbs**, 4157 Rio Bravo, El Paso, Texas 79902; **Miguel Cervantes**, 1013 Montana Avenue, El Paso, Texas 79902; **Francis S. Ainsa, Jr.**, 5809 Acacia Circle, El Paso, Texas 79912; **David M. Driscoll**, 5809 Acacia Circle, El Paso, Texas 79912; **Ruben S. Robles**, 310 N. Mesa, Suite 700, El Paso, Texas 79901; **Robert J. Perez**, 210 N. Campbell, El Paso, Texas 79901; **Glen Sutherland**, 8811 Alameda Ave., El Paso, Texas 79907; **Stephen G. Peters**, 1715 Wyoming Avenue, El Paso, Texas 79902; **John G. Jones**, 5826 Beauvais Drive, Corpus Christi, Texas 78414, on this the 15th day of June, 2009.


 /s/ Manuel Romero
**MANUEL ROMERO**