**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **COUNTY OF EL PASO, TEXAS,** | §_ | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-09-CV-00119-KC** |
| | § | |
| **LUTHER JONES, DAVID ESCOBAR,** | § | |
| **MARTIE JOBE, ELIZABETH** | § | |
| **"BETTI" FLORES, ROBERT** | § | |
| **BOWLING III, ROBERT BOWLING** | § | |
| **IV, SARAH J. THOMAS, GREGORY** | § | |
| **W. COLLINS, ALAN ORTEGA,** | § | |
| **CHRIS JOHNSTONE, FRANK** | § | |
| **ARROYOS, CATALINA** | § | |
| **DEVELOPMENT, INC., TROPICANA** | § | |
| **HOMES, INC., CAREFREE HOMES** | § | |
| **INC., L.P., AMERICAS LOOP 375** | § | |
| **L.P., TROFREE, LLC, CAREFREE** | § | |
| **HOMES I, and TROPICANA** | § | |
| **DEVELOPMENT, INC.,** | § | |
| | § | |
| **Defendants**. | § | |

## <u>ORDER</u>

On this day, the Court considered "Defendants Americas Loop 375, L.P. ("Americas

Loop"), Trofree, L.L.C. ("Trofree"), Tropicana Development, Inc. ("Tropicana"), Tropicana

Homes, Inc. ("Tropicana")[1], and Robert Bowling, III's, ("Bowling III") Motion to Dismiss

---

[1]     Defendants claim that Tropicana Homes, Inc., changed its name to Tropicana Development, Inc., in July 2003. Mot. to Dismiss 1 n.1. The County does not dispute this assertion. Therefore, for the purposes of the present Motion, the Court will refer to both Tropicana Development, Inc., and Tropicana Homes, Inc., as "Tropicana."

-1-

Plaintiff's Second Amended Complaint" ("Motion to Dismiss") (Doc. No. 113).  For the reasons set forth herein, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part.  The Motion to Dismiss is **GRANTED** with respect to Trofree.  The Motion to Dismiss is **DENIED** with respect to Americas Loop, Tropicana and Bowling III.

I.   **BACKGROUND**

The County of El Paso ("the County") alleges that certain Defendants were involved in a Racketeering Influenced and Corrupt Organization ("RICO").  *See generally* Pl's Second Am. Compl. ("Complaint") (Doc. No. 107).  The alleged enterprise, through David Escobar ("Escobar"), Martie Jobe ("Jobe"), and Luther Jones ("Jones"), would provide "consulting services" for clients–"individuals, businesses, or entities having or seeking to do business with [the County]."  *Id.* ¶ 89.  To serve the needs of its clients, the alleged enterprise would offer bribes and other benefits to County officials to secure "favorable resolutions for clients doing, or seeking to do, business with the County."  *Id.*  Former El Paso County Commissioner, Elizabeth Flores ("Flores"), was one such County official.  *Id.* ¶ 93.  According to the County, Flores accepted money and other benefits in exchange for favorable votes in her official capacity as County Commissioner.  *Id.*  The County alleges that the eighteen defendants in the instant case took part in one or more of the following four racketeering episodes:  Catalina Development, Fifteen-Minute Lawsuit, Fair Labor Standards Act 207(k) ("F.L.S.A. 207(k)"), and Digitization of Court Records.  *See generally* Compl.  For her part, Flores has pleaded guilty to her involvement in the alleged racketeering activities; however, all remaining Defendants maintain that they are innocent of the charges.  *See id.* ¶¶ 24, 26-27, 85, 100-01, 106, 163, 166, 214, 238, 276.  The County alleges that the Defendants herein, Americas Loop, Trofree, Tropicana, and

Bowling III were involved in the Catalina Development episode. The County alleges that Bowling III participated both "individually and acting as an officer and agent for Tropicana Homes, Inc." *Id.* ¶¶ 239.

On January 27, 1993, the El Paso County Commissioners Court ("Commissioners Court") passed a motion allowing for the sale of a 381.90-acre parcel of county of land by sealed bids.[2] *Id.* ¶ 30. In October 1994, the Commissioners Court accepted a bid submitted by Gregory W. Collins ("Collins") and Catalina Development, Inc. ("Catalina Development"). *Id.* Shortly thereafter, two commissioners and the County Judge-elect filed suit to enjoin the sale. *Id.* On December 20, 1994, the 34th Judicial District Court issued a temporary restraining order enjoining the sale of the land. *Id.* ¶ 31. On January 30, 1995, Collins and Catalina Development filed suit against the County for breach of contract and for specific performance ("Catalina Development lawsuit"). *Id.* The lawsuit was barred by sovereign immunity, and summary judgment was granted on behalf of the County. *Id.* ¶¶ 31-32.

Approximately nine years after the attempted sale, in fall 2003, Flores, Bowling III, and four other defendants allegedly "discussed and began conspiring to defraud the County of El Paso and its citizens of the tract of land subject to the *Catalina Development* lawsuit." *Id.* ¶ 36 (emphasis in original). According to the County, the six defendants, including Bowling III, had no legal interest in the property prior to these discussions. *Id.* ¶ 38. A joint venture ("Joint Venture"), consisting of Carefree Homes Inc., L.P. ("Carefree Homes") and Tropicana, was formed around this time period. *Id.* ¶ 40. Bowling III, president of Tropicana, negotiated the

---

[2]     The disputed land is located in Section 16, Township 3, Block 79 of the T&P Railroad Survey. Compl. ¶ 31.

assignment of Collins's and Catalina Developments' interest in the land to the Joint Venture. *Id.* ¶ 39. In September or October 2003, Bowling III entered into a legal and consulting contract with Escobar and Jones in which the latter were "to acquire for the Joint Venture the tract of land from the County." *Id.* ¶¶ 40-41.

On November 19, 2003, Escobar, acting as Trustee for the Joint Venture, submitted a settlement offer to the County, offering $10,000 for each of approximately 304 acres, along with reimbursement to the County of all fees and expenses paid by the County to its outside counsel. *Id.* ¶ 42. The County alleges that this offer was forwarded through the United States Postal Service and/or facsimile. *Id.* ¶ 115. On November 20, 2003, Collins and Catalina Development assigned their interest in the Catalina Development lawsuit to Escobar for $150,000, plus a fifteen percent equity interest in a joint venture subsequently formed by the assignees of Collins and Catalina Development called Americas Loops 375, LP ("Americas Loop"). *Id.* ¶ 43. A later investor in Americas Loop, Christopher Johnstone ("Johnstone"), purchased a three percent interest in the joint venture for $200,000 on or about May 4, 2004. *Id.* ¶ 44. Based on this contribution, the County asserts that Americas Loop valued the 304.937 acres at approximately $6,600,000. *Id.* ¶¶ 45-46.[3]

On or about November 21, 2003, Escobar, acting as an agent for the Joint Venture,

---

[3]  According to the County, Americas Loops is a Texas limited partnership. Originally, Trofree was the General Partner, owning one percent of the company. Limited partners were Carefree Homes I, LP ("Carefree Homes"), with a 40.5% interest, Tropicana, with a 40.5% interest, Collins, with a 7.5% interest, Ortega, with a 7.5% interest, and Johnstone, with a 3% interest. Compl. ¶ 44. In December 2008, Collins and Ortega sold their interest in Americas Loop to Tropicana and Carefree Homes, giving the latter companies each a 48.5% interest in the joint venture. *Id.* ¶ 44 n.1.

entered into a consulting contract with Joel Guaderrama ("Guaderrama"), individually and in

Guaderrama's role as President of CR Enterprises. *Id.* ¶ 116. Guaderrama had previously

attempted to obtain the disputed land from the Commissioners Court, and his efforts continued

until he entered into the consulting contract with Escobar. *Id.* ¶¶ 119-20. According to the

County, the purpose of the contract was to eliminate Guaderrama's competing interest in

acquiring the disputed land. *Id.* ¶ 117. Upon the Joint Venture's successful acquisition of the

disputed land, Guaderrama would receive $100,000 from the Joint Venture. *Id.* ¶ 47.

On December 1, 2003, the County rejected the settlement offer submitted by Escobar. *Id.*

¶ 48. Three days later, on December 4, 2003, Escobar submitted a second settlement offer to the

County. *Id.* ¶ 49. On or about December 9, 2003, the County alleges that Escobar, Jones and

Flores met to discuss the second settlement offer. *Id.* ¶ 123. Around this time, Escobar and

Jones "agreed to pay money and other benefits to [Flores] in exchange for her favorable vote."

*Id.* ¶ 136. The County alleges that Escobar "knowingly misrepresented that the offer he

submitted on behalf of the Joint Venture was [] made in good faith as he failed to disclose the

conspiracy efforts of the enterprise to defraud the County of the tract of land." *Id.* ¶ 122. On

December 15, 2003, the Commissioners Court considered the second settlement offer, but it took

no action on the offer at that time. *Id.* ¶ 52. Between December 15, 2003, and December 20,

2003, Flores "requested a special session of the El Paso County Commissioners Court to

consider the second settlement offer." *Id.* ¶ 53. The County alleges that Flores requested this

special meeting by email. *Id.* ¶ 128. A special meeting was held on December 22, 2003. *Id.* ¶

54.

Prior to the vote of the Commissioners Court, Escobar and Jones appeared before the

Commissioners Court "and made material misrepresentations to the Court in furtherance of their efforts to defraud the County. . . . [B]oth withheld from the Commissioners Court that they had offered[,] and Betti Flores agreed[,] to accept money and other consideration in exchange for her vote as an El Paso County Commissioners [sic]." *Id.* ¶ 132. Despite the El Paso County Attorney's recommendation to reject the second settlement offer, the offer was accepted by the Commissioners Court, with Flores voting in favor of accepting the offer. *Id.* ¶ 54. That same day, the County entered into an agreement with Escobar as Trustee of the Joint Venture assignees,

> whereby in consideration for the dismissal and release of all claims related to the tract of land and the promise not to seek a writ of certiorari from the United States Supreme Court, the County of El Paso agreed to sell a portion of the tract of land (approximately 304 acres) to the Joint Venture for $3,040,000.00 or the appraised value of the property, whichever is greater.

*Id.* ¶ 55.

In addition, the Joint Venture agreed to reimburse the County for all attorney fees and costs incurred in the Catalina Development lawsuit. *Id.*

Prior to the December 22, 2003, special meeting, the County alleges that Escobar and Jones met with then County Commissioner Charles Scruggs ("Scruggs") to coerce him to vote in favor of the Catalina Development settlement offer. *Id.* ¶ 51. Escobar and Jones "threatened Commissioner Scruggs with adverse political consequences should he not vote in favor of the settlement." *Id.*

The County further alleges that on or about January 16, 2004, Jones sent an email to Flores containing a letter addressed to Steve Hughes ("Hughes"), then outside counsel for the County. *Id.* ¶ 138. The letter, which was drafted for Flores's signature, asked Hughes about the

appraisal status of the disputed land. *Id.* The email sent by Jones instructed Flores to sign the letter in her official capacity and to forward the letter via facsimile to Hughes. *Id.*

On or about April 9, 2004, Jones, "acting as principal decision maker and coordinator of the enterprise's activities," drafted a letter to Ted Houghton ("Houghton"), an individual who is allegedly familiar with the disposition of public lands. *Id.* ¶¶ 142-44. The letter threatened litigation as a result of Houghton's previous communications with Flores concerning how to maximize the County's profit in its sale of public lands through competitive bidding. *Id.* Jones emailed the letter to Escobar and instructed Escobar to sign the letter and forward it to Houghton. *Id.* ¶ 145. Escobar forwarded the letter on April 4, 2004.[4] *Id.* ¶ 146.

On May 24, 2004, the El Paso County Judge signed a warranty deed conveying the land to Escobar as Trustee for the Joint Venture. *Id.* ¶ 149. On November 15, 2004, Escobar conveyed the land to Americas Loop. *Id.* ¶ 150. In return, Escobar received $580,000 from the Joint Venture for his role as attorney and Trustee. *Id.*

On or about August 26, 2004, Bowling III and Robert Bowling IV ("Bowling IV") delivered campaign contributions to Flores totaling $2,500. *Id.* ¶¶ 151-53. The County claims that this money was "payment for her vote to settle the *Catalina Development* lawsuit" in violation of Texas Penal Code § 36.02(a)(1).[5] *Id.* ¶ 151. The County alleges that "the Bowling's

---

[4]    The dates in the Complaint appear incorrect, as the Complaint states that Jones drafted the letter on April 9, 2004, five days *after* Escobar supposedly forwarded the letter to Houghton on April 4, 2004.

[5]    Under the Texas Penal Code,
[a] person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another: (1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter.

[sic] collectively paid [Flores] $2,500.00" in order for the Joint Venture to acquire the disputed property. *Id.* ¶ 154. According to the County, these payments were arranged jointly by Jones and Escobar. *Id.* The County alleges that further sums of $2,500 "disguised as campaign contributions" were each paid by Jones and Escobar to Flores on December 16, 2004, for a total of $7,500. *Id.* ¶¶ 155-56.

The County asserts that the amount paid by the Joint Venture to the County, $3,200,000[6] plus attorneys' fees and release of all current and future claims concerning the land, was less than the tract's true value, which the County estimates to be $6,660,000. *Id.* ¶ 157. The County further alleges that the monetary injuries it sustained as a result of the land transaction were actually and proximately caused by "the enterprise's fraudulent and racketeering activities." *Id.* ¶ 158.

According to the County, Escobar "failed to disclose the conspiracy efforts of the enterprise to defraud the County of the tract of land." *Id.* ¶ 122. The County also alleges that "Flores purposely withheld critical information that would likely have prevented a vote on the settlement offer." *Id.* ¶ 122. Had the Commissioners Court known that at least one of its members had been bribed to accept the settlement offer, the County asserts that it is unlikely that the Commissioners Court would have accepted the offer. *Id.* ¶ 130.

The County alleges that Americas Loop, Trofree, Tropicana and Bowling III, the latter acting both individually and as an officer and agent for Tropicana, conspired to defraud the

---

TEX. PENAL CODE ANN. § 36.02(a)-(a)(1) (Vernon 2003).

[6] It is unclear from the County's Complaint how the parties agreed upon the $3,200,000 fee. The agreement states that the land would be sold for the greater of $3,040,000 or the appraised value of the property. *See* Compl. ¶ 55.

County of Flores's honest services and conspired to defraud the County of its property. *Id.* ¶ 239. The County further seeks "equitable relief, pursuant to the doctrine of unjust enrichment." *Id.* ¶ 278. The County alleges that this Court has proper supplemental jurisdiction over its state-law claims under 28 U.S.C. § 1367. *Id.* ¶ 23. The County further alleges financial injuries totaling $3,370,000, plus "monies and fringe benefits paid to Betti Flores." *Id.* ¶ 162.

Defendants Americas Loop, Trofree, Tropicana and Bowling III filed a joint Motion to Dismiss the County's Complaint against them on July 15, 2009. *See generally* Mot. to Dismiss. On August 3, 2009, the County filed "Plaintiff's Response to Defendants Americas Loop 375, L.P., Trofree, L.L.C., Tropicana Development, Inc., Tropicana Homes, Inc., and Robert Bowling, III's, Motion to Dismiss Plaintiff's Second Amended Complaint" ("Pl.'s Response") (Doc. No. 133). On August 13, 2009, Defendants filed "Defendants Americas Loop 375, L.P., Trofree, L.L.C., Tropicana Development, Inc., Tropicana Homes, Inc., and Robert Bowling, III's, Reply to Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint" ("Defs.' Reply") (Doc. No. 144).

## II.    DISCUSSION

Americas Loop, Trofree, Tropicana and Bowling III (collectively, "Defendants") seek dismissal of the instant suit against them for lack of subject matter jurisdiction over the County's state-law claims. In the alternative, Defendants motion the Court to decline to exercise supplemental jurisdiction over the County's state-law claims for reasons set forth in 28 U.S.C. §§ 1367(c)(1), 1367(c)(2) and 1367(c)(4). Defendants also seek dismissal of the instant suit against them for failure to state a claim for which relief may be granted. The Court will address each of these issues in turn.

### A.       Subject matter jurisdiction

As an initial matter, Defendants challenge the Court's subject matter jurisdiction over the County's state-law claims against them.  Mot. to Dismiss 1.  According to Defendants, the County's state-law claims 1) do not arise out of the same case or controversy as its federal claim; 2) raise novel or complex issues of state law, making jurisdiction in appropriate; 3) substantially predominate over the federal question claim; and 4) present exceptional circumstances or other compelling reasons for declining jurisdiction.  *Id.* 1-5; *see also* 18 U.S.C. §§ 1367(a), 1367(c)(1), 1367(c)(2), 1367(c)(4).

### 1.       Standard

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In addition, federal district courts have supplemental jurisdiction over state-law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A federal district court may decline to exercise supplemental jurisdiction over a claim if

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c).

### a.       Lack of subject matter jurisdiction under § 1367(a)

The Court indisputably has jurisdiction over the County's civil RICO claim, as Congress

has specifically created a private civil remedy for persons injured by violations of the RICO Act. 18 U.S.C.A. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court."). However, Defendants claim that "the RICO claims asserted against the RICO Defendants are not so related to the state claims that they 'form part of the same case or controversy' under § 1367(a)." Mot. to Dismiss 4. The Court disagrees. Adjudication of the County's state-law claims require factual determinations similar to those underlying the County's federal claim; namely, whether the Defendants intended to defraud the County of its property rights. Further, the County's state-law claims may give rise to co-conspirator liability for predicate acts taken in furtherance of the conspiracy to commit fraud and, as such, will necessarily have to be adjudicated in order to reach the merits of the County's civil RICO claim. Even if the conspiracy to commit fraud claim does not give rise to co-conspirator liability for predicate acts, it is arguably "so related" to the County's federal claim that it "form[s] part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a); *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (finding supplemental jurisdiction appropriate because plaintiff's state and federal claims concerned "the same core factual issue"). Both claims relate to the County's sale of its land to the Joint Venture. Both claims involve a similar cast of characters and similar factual determinations. Although Defendants are not parties to the County's federal RICO claim, § 1367 specifically permits supplemental jurisdiction over claims "that involve the joinder or intervention of additional parties." *See* 28 U.S.C. § 1367(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) ("[T]he grant of supplemental jurisdiction extends to claims involving joinder or intervention of additional

parties.").

### b.    Discretionary supplemental jurisdiction

Alternatively, Defendants argue that the Court should decline to exercise supplementary jurisdiction over the County's claims pursuant to 28 U.S.C. §§ 1367(c)(1), 1367(c)(2) and 1367(c)(4). Mot. to Dismiss 1-5. First, Defendants argue that the County's state-law claim raises a novel or complex issue of state law, making jurisdiction inappropriate. Mot. to Dismiss 4. Defendants cite the County's "conflicting and different remedies" as support for discretionary dismissal of the County's state-law claims.

The Court, however, finds nothing "novel" about the remedy sought by the County in the instant case. "It is well settled in Texas that when a plaintiff brings suit by reason of alleged fraudulent conduct he must elect between suing for damages or for cancellation and recision of a contract or conveyance." *Blum v. Elkins*, 369 S.W.2d 810, 812 (Tex. Civ. App. 1963). However, this does not preclude a plaintiff from seeking redress under two or more theories of recovery, provided that he or she "elect, before the judgment is rendered, under which remedy he [or she] wishes the court to enter judgment." *Star Houston, Inc. v. Shevack*, 886 S.W.2d 414, 422 (Tex. Ct. App. 1994). In the instant case, because no judgment has been rendered in the state court action, the County may seek damages for its state-law claims in federal court. *See Waite Hill Services, Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) ("A party is generally entitled to sue and to seek damages on alternative theories."). Should the County prevail on its state-law claims in state court, Defendants may challenge the County's state-law claims in this Court on a theory of double recovery. *See id.* ("A party is not entitled to double recovery."); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991) (stating

that plaintiffs are prevented from "obtaining more than one recovery for the same injury.").  In

that case, "it would be appropriate for the district court, in determining damages, to adjust [the

County's] remedy in this action to account for any potential for double recovery" in the state

proceeding.  *See Riley v. Simmons*, 45 F.3d 764, 777 (3d Cir. 1995).   However, the existence of a

pending state court claim which seeks an alternative remedy does not divest this Court of

supplemental jurisdiction over that claim, and any concerns about double recovery at this stage

are premature.  *See* 28 U.S.C. § 1367.

Second, Defendants argue that the Court should decline supplemental jurisdiction

because the County's state-law claims "substantially predominate[]" over the County's federal

RICO claim.  Mot. to Dismiss 2.  While Defendants cite 28 U.S.C. § 1367(c)(2) as a reason for

the Court to decline to exercise supplemental jurisdiction over the County's state-law claims,

they fail to explain how the County's state-law claims "substantially predominate[]" over the

federal civil RICO claim in the instant case.  In fact, given their contentions that the civil RICO

claim would involve bringing in even more facts, witnesses, actions and episodes than the

litigation of the state claims arising simply from the Catalina Development episode, it seems that

the federal RICO claim predominates over the pendant state-law claims.  *See* Mot. to Dismiss 4.

Accordingly, the Court finds that § 1367(c)(2)  provides no justification for declining

supplemental jurisdiction.

Lastly, Defendants argue that, because the County's state-law claims against them

are "inextricably intertwined with state law claims already asserted by the County in the state

court proceeding," the Court should decline to exercise supplemental jurisdiction over the

County's state-law claims, as permitted by 28 U.S.C. § 1367(c)(4).  Mot. to Dismiss 3 (citing

*Whiting v. Univ. of S. Mississippi*, 451 F.3d 339, 352 (5th Cir. 2006); *Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 37 (1st Cir. 2003)). Neither case that Defendants cite, however, supports their claim. In *Whiting*, the Court dismissed the plaintiff's state-law claim because the Court had dismissed all remaining original jurisdiction claims, leaving only "pendant questions of state law." *Whiting*, 451 F.3d at 352. In the instant case, the County's civil RICO claim has not been dismissed, making supplemental jurisdiction appropriate. Similarly, the First Circuit in *Che* simply acknowledged that district courts have "'broad discretion' when making decisions regarding supplemental jurisdiction" and that review of such decisions are limited to abuse of discretion. *Che*, 342 F.3d at 37.

It appears that the Fifth Circuit has had only one occasion to evaluate the propriety of a district court's dismissal of a state-law claim pursuant to § 1367(c)(4). *See Hays County Guardian v. Supple*, 969 F.2d 111, 111 (5th Cir. 1992). In *Hays County Guardian*, the Fifth Circuit upheld the district court's refusal to exercise supplemental jurisdiction over plaintiffs' state-law claims for monetary relief. *Id.* at 125. Because the Eleventh Amendment barred the district court from adjudicating plaintiffs' state-law claims against defendants in their official capacity, hearing the plaintiffs' individual-capacity claims would be "a pointless waste of judicial resources." *Id.* In that case, the Fifth Circuit saw no reason to split up a claim that could be fully adjudicated in state court and would require a determination of individual liability and monetary damages unnecessary for adjudicating plaintiffs' federal claim. *Id.*

The Fifth Circuit's decision in *Hays County Guardian* is inapposite to the instant case because adjudication of the County's state-law fraud claim neither severs the County's state-law claims nor requires a determination of liability that is distinct from the County's federal question

claim.  Indeed, adjudication of the state-law conspiracy claim may give rise to co-conspirator liability for predicate acts underlying the County's RICO claim.  *See Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946); *see also Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989) (holding that acts of fraudulent concealment could be imputed to all co-conspirators); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 834 (S.D. Tex. 2009) (*citing In re Performance Nutrition, Inc.*, 239 B.R. 93, 99, 113 (Bankr. N.D. Tex. 1999)) ("Once a civil conspiracy is found, each coconspirator is responsible for any action in furtherance of the conspiracy performed by other conspirators.  In other words, each action in a civil conspiracy is imputed to each coconspirator regardless of who actually performed the acts."); *First Interstate Bank of Nevada, N.A. v. Nat'l Republic Bank of Chicago*, No. 80-C-6401, 1985 WL 1118, at *8 (N.D. Ill. Mar. 10, 1985) (applying co-conspirator liability to meet predicate act requirement in civil RICO claim).

According to the Second Circuit,

> Subsection 1367(c)(4) authorizes federal courts, upon the recognition of "exceptional circumstances," to decline supplemental jurisdiction.  The use of "exceptional circumstances" indicates that "Congress has sounded a note of caution that the bases for declining jurisdiction should be extended beyond the circumstances identified in subsections (c)(1)-(3) only if the circumstances are quite unusual."  In other words, declining jurisdiction outside the ambit of 1367(c)(1)-(3) appears as the exception rather than the rule.  Thus, federal courts "must ensure that the reasons identified as 'compelling' are not deployed in circumstances that threaten this principle."

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) (quoting *Executive Software North Am., Inc. v. United States Dist. Court for Cent. Dist. of California*, 24 F.3d 1545, 1558 (9th Cir. 1994) (overruled on other grounds)) (internal citations omitted); *see also Women Prisoners of District of Columbia Dept. of Corrections v. District of Columbia*, 93 F.3d 910, 950, 320 (D.C. Cir. 1996) ("By using such words as 'exceptional' and 'compelling,'. . .  Congress indicated that invocations of § 1367(c)(4) should be rare.").

Because the Court finds no such "exceptional circumstances" or "compelling reasons" for

declining jurisdiction over the County's state-law claims, Defendants' motion to decline jurisdiction under § 1367(c)(4) is denied. *See* 28 U.S.C. § 1367(c)(4).

Even assuming that Defendants' § 1367(c) challenges to supplemental jurisdiction have merit, their claims do not divest the Court of jurisdiction over the County's state-law claims. As noted above, § 1367(c), on which Defendants' challenges rely, gives federal district courts discretion to decline supplemental jurisdiction over state-law claims that raise any of the issues enumerated in that section of the statute. The statute does not require a federal court to decline to exercise jurisdictions over such claims. The Court finds that supplemental jurisdiction over the County's state-law claim is appropriate, and it finds no "novel or complex issue[s] of State law," predominance of the County's state-law claims over its civil RICO claim, or other "exceptional circumstances" which warrant dismissal of the County's state-law claim under §§ 1367(c)(1), 1367(c)(2) or 1367(c)(4).

### B. Motion to dismiss for failure to state a claim

In addition to their subject matter jurisdiction challenges, Defendants argue that the County has failed to state a claim for conspiracy, for the underlying fraud offense in its conspiracy to commit fraud claim, and for undue enrichment. Defendants argue that deficiencies in the County's pleading warrant dismissal of both of the County's state-law claims pursuant to Rule 12(b)(6).

#### 1. Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in a light

most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Still, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted); *see also Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (stating that a court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions.").

Though a complaint need not contain "detailed" factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation omitted). Thus, to survive a motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570. Nevertheless, "a well-pleaded complaint may proceed even if its strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

When a plaintiff alleges fraud or fraudulent concealment, however, a plaintiff's complaint must meet a heightened pleading standard under Rule 9(b). *See* Fed. R. Civ. P. 9(b). At a minimum, Rule 9(b) requires a plaintiff to state particulars of "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he [or she] obtained thereby." *Tel-Phonic Servs. Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). The Rule 9(b) particularity requirement applies when fraud is alleged as a predicate act in a civil RICO claim. *Id.* at 1138.

## 2. Conspiracy to commit fraud

The County alleges that Bowling III, individually and on behalf of Tropicana, conspired with Bowling IV, Jones, Escobar, Flores and Arroyos to commit fraud against the County. Compl. ¶ 36, 239. The County does not allege that Americas Loop and Trofree participated in this conspiracy. Bowling III and Tropicana argue that the County has not adequately elaborated on this bare assertion, as required by Rules 8 and 9(b) of the Federal Rules of Civil Procedure, and that this constitutes a failure to state a claim upon which relief may be granted, meriting dismissal. *See generally* Mot. to Dismiss 5-9; *see also United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (holding that Rule 9(b) requirements apply to conspiracy to commit fraud cases). To survive a motion to dismiss, a complaint must contain "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Rather, the specific factual allegations must "nudge" the legal conclusions "across the line from conceivable to plausible." *Id.* at 570. Even Rule 8 requires that mental elements be pleaded with some factual basis, and not alleged conclusorily. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009).

The elements of conspiracy under Texas state law are: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Allegations of conspiracy alone, however, are insufficient to sustain a claim of conspiracy to commit fraud. A plaintiff must also state a claim for the underlying fraud offense. *See Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996) ("[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.").

Bowling III and Tropicana attack the sufficiency of the County's pleadings and argue that the County has not sufficiently alleged a "meeting of the minds, its time and place, how or when it involved Bowling III or if it supposedly involved any other Tropicana Defendant." Mot. to Dismiss 6. The Court finds that the County has sufficiently pleaded enough facts to sustain the elements of conspiracy and fraud as to Bowling III and Tropicana.

### a. Two or more persons and an object to be accomplished

First, the County unequivocally identifies two or more persons who allegedly engaged in the conspiracy. Bowling III is alleged to have conspired with Bowling IV, Jones, Escobar, Flores and Arroyos in connection with the Catalina Development episode, satisfying the first element of conspiracy. *See* Compl. ¶ 239. The County also sets out the object of the alleged conspiracy; namely, acquisition by the conspirators, for less than fair market value, of the County-owned land that had been the subject of the earlier Catalina Development lawsuit. *See id.* ¶ 241. Thus, the County has satisfied the pleading requirements for the first two elements of a conspiracy.

### b. Meeting of the minds

Bowling III and Tropicana contend that the County has not sufficiently alleged a meeting of the minds. Mot. to Dismiss 7. They argue that it is unclear from the pleadings as to whether "Bowling III personally had any express agreement or meeting of the minds with Flores." *Id.* They further argue that the pleadings do not make it clear whether Bowling III "had any purported knowledge" of a plan to arrange campaign contributions for Flores in exchange for her scheduling a meeting on, and voting in favor of, a sale of the disputed land. *Id.* Bowling III and Tropicana also note the lack of an express agreement between Bowling III and Flores revealing any further details of the alleged plot. *Id.* at 7-8. These arguments, however, misunderstand the

structure of the alleged conspiracy.

The County does not allege a direct meeting between Bowling III and Flores, nor does it need to. Rather, it alleges that Jones and Escobar served as conduits through which parties with business before the County could, for a fee, obtain favorable treatment. Compl. ¶¶ 89-92. When the County alleges that Bowling III agreed to hire Jones and Escobar in an effort to gain title to the disputed land, the County begins to sketch the outlines of a plot in which, at a minimum, those three individuals conspired to bribe Flores and commit a fraud against the County. *Id.* ¶¶ 239-41. Later, certain conspirators proposed that plan to Flores, and, upon her acceptance, the conspiracy also included her, and served to relate her acts back to her co-conspirators. *Id.* ¶ 243; *see also State v. Standard Oil Co.*, 107 S.W.2d 550, 559 (Tex. 1937) (holding that each co-conspirator "is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination"); *see also Bentley v. Bunton*, 94 S.W.3d 561, 619 (Tex. 2002) (same).

Alleging a meeting between Bowling III and Jones and Escobar for the purposes of hiring the latter pair as "agents" to help acquire the disputed land, implies a meeting of the minds concerning the fraud. Texas law holds that a "[c]ivil conspiracy requires a meeting of the minds between two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex. 1995). Whether this episode is characterized as a conspiracy to accomplish the unlawful purposes of bribery and fraud, or a conspiracy to accomplish the lawful purpose of buying land by using the unlawful means of bribery and fraud, makes little difference so long as the County make clear that the agreement concerned the unlawful means or ends of bribery and fraud, and not the innocent means or ends of hiring certain well-connected consultants.

The County meets this burden with respect to Bowling III. The County alleges that Bowling III initiated the Joint Venture's acquisition of the disputed land. Specifically, the County claims that Bowling III "approached Gregory Collins regarding purchasing Collins's and Catalina Development, Inc.'s interest in the *Catalina Development* lawsuit" at some point in September or October 2003. Compl. ¶ 39. The County further claims that Bowling III "negotiated the terms" of the consulting contract that he and his fellow joint venturers, principally Arroyos and Carefree Homes, would enter into with Jones and Escobar. *Id.* ¶ 40. The County alleges that Bowling III made campaign contributions to Flores on August 26, 2004, and that he arranged for family members to make further contributions that day. *Id.* ¶¶ 243-47. Those funds, together with other contributions made by Jones and Escobar, allegedly served as "payment" for Flores's favorable vote in favor of the second settlement offer. *Id.* The allegations concerning Bowling III's role in the negotiations with Jones and Escobar, along with his active participation in the bribing of Flores, provide sufficient factual detail to support the conclusion that a meeting of the minds on the subject of bribery plausibly took place. *See Faircloth*, 898 S.W.2d at 278.

### c.    One or more unlawful, overt acts

In an effort to argue that the County has not met the illegal-overt-act requirement, Bowling III and Tropicana place great emphasis on Texas Penal Code § 36.02(a)(4), which the County failed to analyze in its Response. They argue that, under that section, which states that a political contribution is not a bribe unless it was "offered, conferred, solicited, accepted, or agreed to pursuant to an express agreement to take or withhold a specific exercise of official discretion if such exercise of official discretion would not have been taken or withheld" but for

the bribe, Bowling III's contributions do not amount to an unlawful bribe. Mot. to Dismiss 8; *see also* TEX. PENAL CODE § 36.02(a)(4). Bowling III and Tropicana add that the pleadings "fail[] to set forth any plausible claim of express agreement between Bowling III and Flores." Mot. to Dismiss 9. This again misunderstands the nature of the alleged conspiracy. The County does allege an express agreement between Jones and Flores to exchange campaign contributions for favorable treatment for certain clients of the alleged RICO enterprise. Compl. ¶ 244. Because Bowling III allegedly previously conspired with, and retained, Jones as an agent for this purpose, Bowling III can be held liable for the actions of Jones. *Id.* ¶¶ 239–40; *see also Standard Oil Co.*, 107 S.W.2d at 559. Thus, the County has adequately alleged that Bowling engaged in an overt act in furtherance of the conspiracy.

### d.    Proximate cause

Defendants argue that bribing a single County Commissioner could not amount to proximately causing the sale when three other Commissioners, a majority in themselves, also voted in favor of it. Mot. to Dismiss 9; *see also* Defs.' Reply 4. Although Flores's vote was not the deciding vote, Defendants overlook the role that Flores played in the second settlement offer's acceptance. Flores, acting in her official capacity as County Commissioner, requested a special session of the Commissioners Court to consider the second settlement offer. Compl. ¶ 127. In response to her request, a special session was held on December 22, 2003. *Id.* ¶ 131. The second settlement offer was approved at that session. *Id.* Prior to the special session, the Commissioners Court had considered the second settlement offer, but it took no action on the offer. *Id.* ¶ 125. It had also received other proposals concerning the disputed property, but similarly took no action on these proposals. *Id.* ¶ 119. Thus, it is plausible that "but for" the

conduct of the Defendants in providing money and/or other benefits to Flores, the Commissioners Court would never have voted in favor of accepting the Joint Venture's second settlement offer. Because it is also foreseeable that Defendants' conduct in offering bribes to Flores could lead to acceptance of the offer, the County has established proximate cause. *See Navigant Consulting, Inc.*, 508 F.3d at 289.

### e. Damages

Defendants further argue that damages cannot be plausibly inferred from the County's Complaint because the County relied on an independent appraisal when settling on a final price. Mot. to Dismiss 9. In determining whether to grant a motion to dismiss, a district court "must not go outside the pleadings." *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However, there is a "limited exception" for "documents that are referred to in the plaintiff's complaint and are central to plaintiff's claim" or for public records. *Id.*; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Because the alleged appraisal is neither referred to in the County's Complaint nor is it a public record, the Court declines to review it for purposes of Defendants' motion.

The County claims that Flores's actions prevented the County from obtaining the benefit of competitive bidding for the land, which could plausibly have increased the amount that it received for the disputed land. Compl. ¶ 277. The County alleges that the true value of the land was $6,600,000, based on the price that Johnstone paid for his stake in the venture, a price significantly greater than what the County received for the land. Compl. ¶ 45; *see also Twombly*, 550 U.S. at 556. Whether the County's or Defendants' calculations of the land's value are ultimately correct is a matter best deferred until the fact-finding stages of the proceedings. For

the foregoing reasons, the Court should find that the five elements of conspiracy have been adequately pleaded against Bowling III.

### f. Tropicana's involvement in the alleged conspiracy

The County also states a claim for conspiracy to commit fraud against Tropicana, arguing that it is derivatively responsible because Bowling III acted as its agent. Texas law recognizes that employee-agents may bring the companies they represent into a conspiracy. *THPD, Inc. v. Cont'l Imports, Inc.*, 260 S.W.3d 593, 605 (Tex. Ct. App. 2008). Beyond the conclusory statements to this effect, the County also alleges that Bowling III is the president of Tropicana, which supports its contention that he acted on his company's behalf. Compl. ¶ 9. Given the relevance of a land transaction to a real estate development company, it is plausible to infer that Bowling III was acting on behalf of his company in this matter. Furthermore, Bowling III controls his interest in the underlying land through his control of Tropicana, which owns a large stake in Americas Loop, the entity actually holding title to the land. *Id.* ¶ 44. Interposing this corporate entity between himself and the land in this way further supports the notion that the corporation is a part of the plan, and not an entity that was meant to remain on the sidelines. Based on its Complaint and the fact that Bowling III's agency is not disputed in Defendants' filings, the Court finds that the County has stated a claim of conspiracy against Tropicana.

### g. Fraud by omission

As noted above, a pleading asserting a conspiracy to commit fraud must sufficiently allege the underlying fraud, as well as the elements of conspiracy. *Avery Pharm.*, 2009 WL 279334, at *11. The Defendants argue that the County "does not allege sufficient facts supporting the elements of fraud." Mot. to Dismiss 6. However, they misapprehend the nature

of the fraud alleged here. *Id.* The County alleges that Flores committed fraud by material

omission or fraud by non-disclosure. Compl. ¶¶ 161, 211; *see Four Bros. Boat Works, Inc. v.*

*Tesoro Petroleum Cos., Inc.*, 217 S.W.3d 653, 670 (Tex. Ct. App. 2006) ("Fraud by omission is a

subcategory of fraud because the omission or non-disclosure may be as misleading as a positive

misrepresentation of fact where a party has a duty to disclose."). The elements of fraud by

material omission are: (1) a party conceals or fails to disclose a material fact within his or her

knowledge; (2) the party knows that the other party is ignorant of the fact and does not have an

equal opportunity to discover the truth; (3) the party intends to induce the other party to take

some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a

result of acting without knowledge of the undisclosed fact. *Bradford v. Vento*, 48 S.W.3d 749,

754-55 (Tex. 2001).

  To be liable for fraud by material omission, a defendant must have a duty to disclose, and

the information withheld must be material. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674

(Tex. 1998); *Nelson v. Najm*, 127 S.W.3d 170, 174 (Tex. Ct. App. 2003) ("A failure to disclose

information does not constitute fraud unless there is a duty to disclose."). The existence of a duty

to disclose is a question of law, *Bradford*, 48 S.W.3d at 755, and it may arise in the following

situations:

> (1) when there is a fiduciary relationship; (2) when one voluntarily discloses
> information, the whole truth must be disclosed; (3) when one makes a
> representation, new information must be disclosed when that new information
> makes the earlier representation misleading or untrue; and (4) when one makes a
> partial disclosure and conveys a false impression.

*Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. Ct. App. 1997).

 Materiality exists if disclosure of the fact "would likely affect the conduct of a reasonable person

concerning the transaction in question." *Miller v. Kennedy & Minshew, Prof'l Corp.*, 142 S.W.3d 325, 345 (Tex. Ct. App. 2003).

The County alleges that, as an employee of the County, Flores had a duty to disclose her involvement in the Catalina Development conspiracy. Compl. ¶ 297. The County's claim is not without support. "The duty to disclose arises when one party knows that the other party is ignorant of the true facts and does not have an equal opportunity to discover the truth. A fact is material if it would likely affect the conduct of a reasonable person concerning the transaction in question." *Miller*, 142 S.W.3d at 345; *see also Hoggett*, 971 S.W.2d at 487; *Nelson*, 127 S.W.3d at 175 (citing *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)) ("Texas law has long imposed a duty to abstain from inducing another to enter into a contract through fraudulent means."). The County further alleges that, had Flores disclosed her involvement in Defendants' scheme, it is "very likely" that the Commissioners Court would have changed its conduct and voted against accepting the second settlement offer. Compl. ¶ 296. Thus, the County has stated facts that make it plausible that Flores had a duty to disclose her participation in Defendants' scheme and that her non-disclosure was material.

Allegations of fraud must be pleaded with particularity. FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). At a minimum, this requires a plaintiff to allege "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the representation and what that person obtained thereby." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). "To plead scienter adequately, a plaintiff must set forth specific

facts that support an inference of fraud." *Id.*

The County has made factual allegations sufficient to make out a claim for fraud by omission, and it has stated the time and place of the alleged fraud, the identity of Flores and the other co-conspirators, the contents of the material omissions and what Defendants gained thereby. Flores's omissions occurred in El Paso in December 2003. Compl. ¶¶ 127-131. Flores withheld information about the attempted fraud and about the fact that her favorable vote had been procured through bribes. *Id.* ¶ 161. Flores knew that the other members of the Commissioners Court did not have an equal opportunity to discover the truth, and, by calling the special meeting, she intended to persuade the other Commissioners to accept the second settlement offer. *Id.* ¶¶ 127-28. As a result of Flores's omissions, the County alleges that Defendants were able to undermine a competitive bidding process for the land and secure the land at less than its true market value. *Id.* ¶ 157. Although the Tropicana Defendants argue that the County has failed to show that the other Commissioners relied on Flores's fraud by material omission, "[r]eliance is ordinarily a question of fact for the fact-finder" and is often "not a proper matter for dismissal on the pleadings." *See Celanese Corp. v. Coastal Water Auth.*, 475 F. Supp.2d 623, 637 (S.D. Tex. 2007) (citing *Jones v. Ray Ins. Agency*, 59 S.W.3d 739, 754 (Tex. Ct. App. 2001)). Thus, the County has sufficiently alleged the elements of the conspiracy and the underlying fraud, and its claim survives Defendants' Motion to Dismiss.

### 3. Unjust enrichment

The County also seeks to recover damages on a theory of unjust enrichment. Compl. ¶¶ 278, 280. According to Texas state law, "[u]njust enrichment, itself, is not an independent cause of action." *Dudley Constr. v. Dawson*, 258 S.W.3d 694, 703 (Tex. Ct. App. 2008).

Rather, this doctrine "belongs to the measure of damages known as quasi-contract or restitution," and its purpose is "to place an aggrieved plaintiff in the position he occupied prior to his dealings with the defendant." *Burlington N. R.R. v. Sw. Elec. Power*, 925 S.W.2d 92, 96–97 (Tex. Ct. App. 1996). One of the elements of an unjust enrichment claim is an underlying contact or nexus between the plaintiff seeking the recovery and the defendant from whom recovery is sought. *Id.* Texas law also demands that, in some way, those dealings must have been inequitable, in favor of the defendant and at the expense of the plaintiff, for an unjust enrichment claim to hold. *See Dudley Constr.*, 258 S.W.3d at 703 (including "fraud, duress or taking of undue advantage"); *see also Burlington N. R.R.*, 925 S.W.2d at 98 n.6 ("Appellee does not aver fraud, accident, mistake, duress or bad faith on the part of the appellant [therefore making unjust enrichment unavailable]."). This can be viewed as an "active" form of unjust enrichment.

Texas law also reveals that unjust enrichment can touch "passively received" benefits, where the nexus is some related third party's acts against a plaintiff, when it would be "unconscionable for the receiving party to retain" them. *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. Ct. App. 2002). A remedy is not available "merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Id.* at 679–80 (citing *Heldenfels Bros. v. Corpus Christi*, 832 S.W.2d 39, 40 (Tex. 1992)). Rather, it requires a justification, such as unconscionability. *Id.* Unconscionability can be shown under Texas law in cases where one party benefits at the expense of another and, absent an equitable remedy, the benefitting party would not have to compensate the other party at all. *See RDG Ltd. v. Gexa Corp.*, No. 14-04-679-CV, 2005 WL 949171, at *2 (Tex. Ct. App. Apr. 26, 2005).

The County has successfully alleged that Bowling III and Tropicana engaged in a conspiracy to commit fraud against the County.  It may therefore use the remedy of unjust enrichment to pursue any gains the flowed from that conduct.  *See Dudley Constr.*, 258 S.W.3d at 703.  With respect to Americas Loop, the County has a plausible claim either under a theory that Bowling III's acts may be imputed to it, or under the "passively received" prong of unjust enrichment.  The County alleges that Americas Loop is the embodiment of the Joint Venture, led by Bowling III, which sought to acquire the disputed land through fraud, bribery and corruption, and it held and still holds title to the land in question.  Compl. ¶¶ 44, 57.  In that connection, the County further alleges that it was not an innocent third party which came to hold title to the land, but was an affiliate of Bowling III, and that Bowling III was its agent.  *Id.* ¶¶ 19, 278.  These facts support a theory that imputes Bowling III's actions to Americas Loop for the purposes of unjust enrichment.

These facts also support a theory that, absent some remedy, Americas Loop and its equity stakeholders would retain the benefit of the land at the expense of the County, which allegedly received less than fair market value for the land.  Such a scenario can form the basis of the County's recovery.  *See RDG Ltd.*, 2005 WL 949171, at *2   The facts alleged in the pleadings thus support a claim of unjust enrichment against Bowling III, Tropicana and Americas Loop, though it must be restated in this connection that no matter how many defendants, theories of recovery, or forums the County chooses to include in this matter, its remedy is fundamentally limited by the single-recovery rule.  *See Stewart Title Guar. Co.*, 822 S.W.2d at 7.

The Defendants also argue that unjust enrichment is inapplicable here because a contract covers the subject matter at hand, and unjust enrichment is not available when a contract exists.

Mot. to Dismiss 10 (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)).

The County responds that unjust enrichment is generally not available when a contract exists, but

it is available when the contract was procured through fraud.  Pl.s' Resp. ¶¶ 44, 45.  The Court

finds support in Texas law for the County's proposition.  Restitution under a theory of unjust

enrichment is appropriate "in circumstances where the agreement contemplated is unenforceable

. . . or void for other legal reasons."  *Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d

313, 319 (Tex. Ct. App. 1992).  Accordingly, the Court declines to dismiss the County's unjust

enrichment claim.

With respect to Trofree, the allegations contained in the County's pleadings do not

support a theory of recovery against it.  The County alleges that Trofree is the general partner of

Americas Loop; however, it does not allege that Trofree took any action on behalf of the

partnership.  Compl. ¶ 44.  The County is also unclear as to who actually controls Trofree or who

acts on its behalf.  The County alleges that Frank Arroyos ("Arroyos") is its agent for service of

process, but it lists an address for Trofree that is commonly associated with Bowling III and

Tropicana.  *See* Compl. ¶ 20; *cf.* ¶¶ 9, 15, 18, 22.  Texas law allows a limited partnership to sue

and be sued in its own name; however, the Court finds it inappropriate to keep Trofree in the

instant suit simply as a means of reaching Americas Loop.  Tex. R. Civ. P. 28 ("Any partnership

. . . may sue or be sued under its partnership, assumed or common name. . ."); *see also R & R*

*White Family Ltd. P'ship v. Jones*, 182 S.W.3d 454, 458 (Tex. Ct. App. 2006).  Because the

County alleges almost nothing about Trofree, its management, or any action taken on its behalf,

the claim against Trofree should be dismissed.

**III.    CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss (Doc. No. 113) is

**GRANTED** in part and **DENIED** in part.  The County's state-law claims against Defendant

Trofree are dismissed.  All other claims survive.

**SO ORDERED.**

**SIGNED** on this 4th day of December, 2009.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE