# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| COUNTY OF EL PASO, TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-09-CV-00119-KC |
| | § | |
| LUTHER JONES, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day, the Court considered Defendant Luther Jones's ("Jones") "Motion for Protective Order Regarding Discovery During Pendency of Criminal Proceedings" ("Jones's Motion") (Doc. No. 174) and Defendants Americas Loop 375, L.P.'s ("Americas Loop"); Tropicana Development, Inc.'s ("Tropicana Development"); and Tropicana Homes, Inc.'s ("Tropicana Homes") "Motion to Compel Arbitration and Stay Proceedings" ("Motion to Compel") (Doc. No. 180). For the reasons stated herein, Jones's Motion is **GRANTED** in part, and Defendants' Motion to Compel is **GRANTED** in its entirety.

## I.     Jones's Motion

The facts of this case are set out in detail in the Court's Order dated December 4, 2009, ("Order") (Doc. No. 170). In his Motion, Jones asks the Court to enter a protective order to delay the due date for his responses to discovery until after the criminal investigations and criminal trial related to the above-captioned cause have ended. Jones's Mot. ¶ 17. In the alternative, he motions the Court to abate the entire case pending the resolution of "all criminal allegations against him which have been made the subject of the lawsuit." *Id.*

Plaintiff, the County of El Paso ("the County"), acknowledges that the Court has discretion to stay the instant suit; however, it argues that a stay is unwarranted given that "Jones is not currently under indictment for any of Plaintiff's claims against him, minus the civil RICO conspiracy claim that has been dismissed by this Honorable Court against RICO defendants Escobar and Jobe." Pl.'s Resp. in Opp'n to Def. Luther Jones'[s] Mot. for Protective Order Regarding Disc. During Pendency of Criminal Proceedings ("Pl.'s Resp.") (Doc. No. 184) ¶¶ 19, 39. Should the Court order a stay, the County requests that "the Court stay the entire matter" so as not to prejudice the County by forcing it to go forward with its civil action without "Jones'[s] full participation in discovery." *Id.* ¶¶ 39-40.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.

> The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-707 (1997). Thus, the decision whether to stay civil litigation pending the resolution of related criminal proceedings is within a district court's discretion. *Kmart Corp. v. Aronds*, 123 F.3d 297, 300 (5th Cir. 1997) (citing *Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986)).

The County notes that Jones is currently under criminal indictment for conspiracy to commit mail and wire fraud, crimes that allegedly occurred during one of the four RICO episodes

2

that form the basis of the County's civil RICO claim. Pl.'s Resp. ¶ 15. Because Jones has not been indicted for any of the remaining three RICO episodes alleged against him in the instant suit, the County argues that a protective order is unnecessary to protect Jones's constitutional rights and that his Motion should be denied. *Id.* ¶¶ 16, 26. The County cites an unpublished district court case in the Southern District of Illinois as support for its claim that "[t]he weight of authority suggests that a stay is generally not appropriate before indictment." *Id.* ¶ 18 (citing *United States ex. Rel. Shank v. Lewis Enters.*, No. 04-CV-4105, 2006 U.S. Dist LEXIS 22065, at *9 (S.D. Ill. Apr. 21, 2006)). However, this claim disregards that there *is* an indictment against Jones that is directly related to the instant suit. *See* Indictment 1-11 (Doc. No. 5). Both the criminal case and this civil suit involve Jones's alleged acts of mail and/or wire fraud in connection with the Digitization of Court Records civil RICO episode. *See* Compl. ¶¶ 214-237; Indictment 1-4; Mem. Op. and Order Regarding Defs.' Joint Mot. to Dismiss All Five Counts of the Indictment (Doc. No. 97) 27 (denying Jones's Motion to Dismiss as to Counts One and Two of the Indictment). Forcing Jones to submit to discovery requests during the pendency of the criminal investigation and trial may to expose him to additional criminal liability in violation of his Fifth Amendment right "not to answer official questions put to him in any [civil] proceeding . . . where the answers might incriminate him in future criminal proceedings." *See Lefkowitz*, 414 U.S. at 77.

On the other hand, as Jones is alleged by the County to be the "principal decision maker and coordinator of activities of the enterprise," Pl.'s Second Am. Compl. ("Compl.") (Doc. No. 107) ¶ 138, the Court agrees that the County "would be prejudiced if it is forced to go forward without the benefit of discovery against [Jones]." Pl.'s Resp. ¶ 41. For this reason, Jones's

3

Motion is **GRANTED**. The above-captioned cause is **STAYED** in its entirety, pending the resolution of the related criminal case against him. *See* Jones's Mot. 17.

**II.     Motion to Compel**

Defendants Americas Loop, Tropicana Development and Tropicana Homes (collectively, "Defendants") motion the Court to compel arbitration for all state law causes of action arising out of the Catalina Development land transaction with the County, pursuant to the arbitration clause contained in its Amended Rule 11 Agreement ("Rule 11 Agreement") with the County. Mot. to Compel ¶ 13.

"Under Texas law, a written agreement to arbitrate is valid and enforceable if an arbitration agreement exists and the claims asserted are within the scope of the agreement." *Texas Petrochemicals LP v. ISP Water Mgmt. Servs. LLC*, --- S.W.3d ----, 2009 WL 4669938, at *3 (Tex. Ct. App. 2009) (citing TEX. CIV. PRAC. & REM. CODE §§ 171.001, 171.021 (Vernon 2005)). The parties do not dispute the existence of the arbitration agreement.[1] Mot. to Compel ¶ 3; Pl.'s Resp. ¶ 3. Indeed, the Defendants have provided the Court with a copy of the Rule 11 Agreement, which reads, "[t]he parties agree that any dispute as to the interpretation or meaning or enforcement of this agreement shall be resolved by binding mandatory arbitration pursuant to the provisions of the Texas Arbitration Act."[2] Mot. to Compel Ex. B ¶ 6. The Rule 11

---

[1]  Although the County challenges the contract as void, it does not deny that it entered into a signed agreement with Defendants containing an arbitration clause. As such, its contractual challenge is more aptly addressed in the defenses section below.

[2]  Neither party disputes that the Texas General Arbitration Act ("TAA") governs the arbitration clause in the instant case. *See* TEX. CIV. PRAC. & REM. CODE § 171.001 *et seq.* (Vernon 2005). The Federal Arbitration Act ("FAA") preempts state arbitration acts involving maritime transactions or interstate commerce. 9 U.S.C. § 2. Because the instant suit involves in-state parties to an entirely intrastate land transaction, the TAA governs the contractual dispute. However, "[w]hether a case is governed by the [FAA] or the TAA, many of the underlying substantive principles are the same." *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex.

Agreement is signed by Steve Hughes ("Hughes"), Counsel for the County of El Paso, Texas; David Escobar, Counsel for the Assignees of Catalina Development, Inc. ("Catalina Development"); and Robert Skipworth, Counsel for Catalina Development & Gregory Collins. *Id.* at 5; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (holding that written arbitration clauses are presumptively valid). Thus, for Defendants to meet their initial burden, they need only show that the instant dispute falls within the scope of the arbitration agreement.

"Determining whether a claim falls within an arbitration agreement's scope is a matter of contract interpretation and, thus, a question of law for the court." *In re Helix Energy Solutions Group, Inc.*, --- S.W.3d ----, 2010 WL 11262, at *9 (Tex. Ct. App. 2010) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

> To determine whether a party's claims fall within an arbitration agreement's scope, we focus on the complaint's factual allegations rather than the legal causes of action asserted. Because Texas's public policy strongly favors the arbitration of disputes, an order to arbitrate should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Texas Petrochemicals LP*, --- S.W.3d ----, 2009 WL 4669938, at *3 (internal citations and quotation marks omitted).

In its Complaint, the County alleges that Defendants and others were responsible for bribing at least one County Commissioner into voting in favor of the Rule 11 Agreement. Compl. ¶¶ 134-35. The County disputes the validity of the Rule 11 Agreement given Defendants' alleged unlawful activities. Because it cannot be said that the arbitration clause,

---

2008). Therefore, where appropriate, this Order "relies interchangeably on cases that discuss the FAA and TAA." *See id.* at 56 n.10.

which purports to govern "any dispute as to the . . . enforcement" of the settlement agreement, "is not susceptible of an interpretation that covers the asserted dispute," Defendants have met their initial burden, and the burden shifts to the County to assert a reason that the arbitration agreement is unenforceable. *See* TEX. CIV. PRAC. & REM. CODE § 171.001(b) (stating that once an arbitration clause is shown to be valid and enforceable, "[a] party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract"); *see also Texas Petrochemicals LP*, --- S.W.3d ----, 2009 WL 4669938, at *3 ("Once a valid agreement to arbitrate is established, the burden to show that a claim falls outside the scope of the arbitration provision lies with the party that opposes arbitrating the dispute."); *see also Chambers v. O'Quinn*, --- S.W.3d ----, 2009 WL 3152968, at *2 (Tex. Ct. App. 2009) (citing *Dallas Cardiology Assoc., P.A. v. Mallick*, 978 S.W.2d 209, 212 (Tex. Ct. App. 1998)) (internal citations omitted) ("Once the existence of an arbitration agreement has been established, a presumption attaches favoring arbitration. At this point, the burden shifts to the opposing party to establish some ground for the revocation of the arbitration agreement. Such grounds include fraud, waiver, unconscionability, or that the dispute falls outside the scope of the agreement. The trial court must resolve any doubt about these issues in favor of arbitration.").

The County has presented four arguments as to why it should not be bound by the arbitration clause in the Rule 11 Agreement. First, the County alleges that its Complaint, which does not seek to compel performance of any terms or conditions of the Rule 11 Agreement, is outside of the scope of the arbitration clause. Pl.'s Resp. ¶ 5. Second, the County argues that the agreement is void because Commissioner Elizabeth "Betti" Flores ("Flores") was acting outside of the scope of her agency when she voted in favor of the Rule 11 Agreement. *Id.* ¶ 8. Third, the

County argues that the arbitration clause is void as having been "procured in an unconscionable manner of fraud and conspiracy." *Id.* ¶ 9. Lastly, the County argues that Defendants' Motion to Compel must be denied because Defendants have failed to join all necessary parties to the arbitration. *Id.* ¶¶ 10-14 (citing FED. R. CIV. P. 19(a)). The Court addresses each alleged ground for denying Defendants' Motion to Compel in turn.

### A. The County's Complaint is outside of the scope of the arbitration clause

Although the movant is responsible for making an initial showing that the instant dispute falls within the scope of the arbitration clause, a nonmovant may challenge this initial showing. *See Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995). The County claims that the instant dispute does not involve the "interpretation or meaning or enforcement" of the Rule 11 Agreement. Pl.'s Resp. ¶ 4. Rather, "[t]he County's Complaint alleges fraud in obtaining the settlement of the *Catalina Development* lawsuit which led to the execution of the Amended Rule 11 Agreement." *Id.* The Defendants state that "the County's allegations of conspiracy to defraud the County of its land by supposedly defrauding the County into entering the Rule 11 Agreement . . . go to the very heart of the enforceability of the Rule 11 Agreement itself." Defs.' Reply ¶ 5.

Given the facts of the case before it, and the strong presumption in favor of arbitration, the Court cannot find that the County's conspiracy to defraud claim falls outside of the scope of the arbitration clause. *See Prudential Sec. Inc.*, 909 S.W.2d at 900; *Am. Employers' Ins. Co. v. Aiken*, 942 S.W.2d 156, 159 (Tex. Ct. App. 1997) (citing *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996)) ("Any doubts regarding the scope of an arbitration agreement should be resolved in favor of arbitration."); *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) ("Claims must be brought on the contract (and arbitrated) if liability arises

7

solely from the contract or must be determined by reference to it."); *Teal Const. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex. Ct. App. 2001) (citing *Capital Income Props.-LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex. 1992)) ("The Texas Supreme Court has expressed a strong policy preference for enforcing arbitration clauses."). The Court agrees with Defendants that the County's Complaint is, at the very least, "factually intertwined" with the land transaction governed by the Rule 11 Agreement and that the County's Complaint relates to the "enforceability" of the Agreement. *See Prudential Sec. Inc.*, 909 S.W.2d at 900. For this reason, the Court rejects the County's argument that its claims against Defendants lie outside of the scope of the Rule 11 Agreement's arbitration clause.

    **B.**    **Flores acted outside of the scope of her agency, rendering the Rule 11 Agreement void**

Next, the County argues that the arbitration clause is void because Flores lacked both actual and apparent authority to enter into the Rule 11 Agreement with Defendants. *Id.* ¶ 8 (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26 (2d Cir. 2001)). The Second Circuit defines a "void contract" as "one that produces no legal obligation." *See Sphere Drake Ins. Ltd.*, 263 F.3d at 31. A "voidable contract," on the other hand, is an agreement that, unless rescinded, imposes on the parties the same obligations as if it were not voidable. *Id.* According to the Second Circuit, a party who wishes to defeat an arbitration clause must allege that the contract as a whole is void or that the arbitration clause, in particular, is voidable. The County cites *Sphere Drake* as support for its assertion that "[a] party alleging that a contract is void, and providing some evidence in support, is entitled to a trial on the contract's arbitrability." Pl.'s Resp. ¶ 8.

Notwithstanding the fact that the Texas Supreme Court does not appear to have adopted the same void/voidable distinction that the County urges this Court to adopt, even jurisdictions that recognize the void/voidable distinction in contract law find that, "an allegation of fraud in the inducement is an allegation that renders contracts voidable, but not void." *Id.* Because, "a party is not entitled to a trial on the arbitrability of a voidable contract unless the party alleges that the arbitration clause itself is voidable and provides some evidence in support of its allegation," the County's argument is unavailing. *See id.*; *see also Henry v. Gonzalez*, 18 S.W.3d 684, 690 (Tex. Ct. App. 2000) ("[A]n arbitration agreement contained within a contract survives the termination or repudiation of the contract as a whole."). Thus, even if fraudulent inducement led Flores to exceed the scope of her agency powers, the County must allege that Flores was fraudulently induced into voting in favor of the arbitration clause specifically. "An allegation that the contract itself was fraudulently induced is a matter to be decided by the arbitrator." *Id.* Because the County claims that Flores was fraudulently induced "to vote in favor of settlement and the Rule 11 agreement" as a whole, Pl.'s Resp. ¶ 8, the issue must be submitted to arbitration.

## C. The Rule 11 Agreement arbitration clause is void as unconscionable

The County also alleges that "the arbitration clause of the Amended Rule 11 agreement was procured in an unconscionable manner of fraud and conspiracy." Pl.'s Resp. ¶ 9. Specifically, the County argues that "the bribing of a County Commissioner in the settlement and subsequent sale of land to the detriment to the citizens of the County of El Paso is an unconscionable act in violation of the [sic] public interests and public policy." *Id.*

9

"A court may not enforce an agreement to arbitrate if the court finds the agreement was unconscionable at the time the agreement was made." TEX. CIV. PRAC. & REM. CODE § 171.022. A party challenging a motion to compel arbitration on the ground of unconscionability may challenge the arbitration as procedurally unconscionable, which refers to the "circumstances surrounding the adoption of the arbitration provision" or as substantially unconscionable, which refers to "the fairness of the arbitration provision itself." *Jones v. Halliburton Co.*, 625 F. Supp. 2d 339, 346 (S.D. Tex. 2008) (citing *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)). The County appears to challenge the arbitration clause on the ground of procedural unconscionability because it was allegedly induced into agreeing upon the arbitration clause through fraud. Pl.'s Resp. ¶ 9.

A district court may consider procedural unconscionability when evaluating the validity of an arbitration provision. *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 859 (Tex. Ct. App. 2007) (citing *Halliburton*, 80 S.W.3d at 572). However, under the severability doctrine, a party claiming unconscionability must claim that the arbitration clause itself was procured through unconscionable means, not the entire contract as a whole. Otherwise, the validity of the arbitration clause is for the arbitrator to decide. *See TMI, Inc. v. Brooks,* 225 S.W.3d 783, 792-93 (Tex. Ct. App. 2007) (citing *Am. Med. Techs., Inc. v. Miller*, 149 S.W.3d 265, 272 (Tex. Ct. App. 2004)) ("[W]hen a party's claim of fraudulent inducement is directed at the contract as a whole, rather than at the arbitration claim itself, the issue must be determined by an arbitrator."); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[A] federal court may consider only issues relating to the making and performance of the agreement to

10

arbitrate."); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002) ("When deciding whether an arbitration provision is valid, the Court may only consider "issues relating to the making and performance of the agreement to arbitrate," and not "claims of fraud in the inducement of the contract generally."). Although a Court cannot entertain claims that the entire contract was procured by fraud, "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it." *Prima Paint Corp.*, 388 U.S. at 403-04.

The County's efforts at avoiding the severability doctrine are unavailing. Although the County claims that the inclusion of arbitration clause itself was the result of fraud, the County's claim appears to apply to the entire Rule 11 Agreement. *See Halliburton Co.*, 625 F. Supp. 2d at 347; *see also Teal Const. Company/Hillside Villas Ltd.*, 46 S.W.3d at 420; *Blackmon*, 843 S.W.2d at 23 ("There is ample case law stating that claims of fraud relating to the making of the contract are subject to arbitration."). "[T]he party opposing arbitration must show that the fraud relates to the arbitration provision specifically, not to the broader contract in which it appears. If a trial court finds that the claim falls within the scope of a valid arbitration agreement, the 'court has no discretion but to compel arbitration and stay its own proceedings.'" *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001); *see also Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002) (citing *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 961 F.2d 1148, 1154 (5th Cir. 1992) ("[A] party contesting the 'making' of the arbitration agreement must 'make at least some showing that under prevailing law, he would be relieved of his contractual obligations to arbitrate if his allegations proved to be true . . . [and] produce some evidence to substantiate his factual

11

allegations.'"). Because the County does not attack the arbitration clause on an independent basis, but rather claims that it was procured by the same alleged fraud as the entire the contract, namely, the bribing of Flores, its procedural unconscionability claim is a question for the arbitrator, and the Court cannot justify a finding that the arbitration clause was invalid. *See Jones*, 625 F. Supp. 2d at 345-46.

The County also challenges the Motion to Compel on the ground that the arbitration clause violates public policy. Pl.'s Resp. ¶ 4. However, this argument, too, is unavailing, as "Texas public policy favors arbitration." *See Abdel Hakim Labidi v. Sydow*, 287 S.W.3d 922, 928 (Tex. Ct. App. 2009) (citing *Forest Oil Corp.*, 268 S.W.3d at 56).

### D. Failure to join all necessary parties to the arbitration pursuant to Rule 19(a)(1)

Lastly, the County argues that arbitration is "inapplicable and would be ineffective in resolving the instant matter as it does not join all affected parties to the instant complaint." Pl.'s Resp. ¶ 10.

Under Rule 19(a)(1),

> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). However, the Supreme Court has held that "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to

the arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20, 103 (1983); *see also Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1267 (5th Cir. 1994).

For this reason, the Court finds that the instant dispute should be submitted to arbitration, pursuant to the parties' Rule 11 Agreement. *See id.*; *see also In re Weekley Homes*, 985 S.W.2d 111, 114 (Tex. Ct. App. 1998) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)) ("Once it is determined parties are obligated to submit the subject matter in dispute to arbitration, procedural questions growing out of the dispute and bearing on its final disposition are left to the arbitrator."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (arbitration does not deprive a party of his or her defenses to the contract, it simply limits the resolution to an arbitral, rather than judicial, forum). Because the Court grants Defendants' Motion to Compel, it hereby orders a **STAY** of proceedings. *See* TEX. CIV. PRAC. & REM. CODE § 171.021(c) ("An order compelling arbitration must include a stay of any proceeding subject to Section 171.025."); TEX. CIV. PRAC. & REM. CODE § 171.025(a) ("The court shall stay a proceeding that involves an issue subject to arbitration if an order for arbitration or an application for that order is made under this subchapter."). Generally, a stay "applies only to the issue subject to arbitration if that issue is severable from the remainder of the proceeding." *Id.* § 171.025(b). However, because the Court finds that the "pattern requirement" of civil RICO claims makes severability untenable, the entire case is **STAYED** pending the resolution of this matter in arbitration.

### III. CONCLUSION

For the reasons stated above, the Court **ORDERS** the above-captioned cause **STAYED** as to all Defendants, pending the resolution of the related criminal matters with respect to

Defendant Luther Jones and **STAYED** pending the arbitration pursuant to the arbitration clause contained in Defendants' Rule 11 Agreement with the County. The above-captioned cause will resume only after both the related criminal trial and the arbitration have ended.

    **IT IS FURTHER ORDERED** that Defendant Luther Jones file notice with the Court, advising the Court that his related criminal trial has ended, within **ten (10) days** of a final disposition of said matters, appeals notwithstanding.

    **IT IS FURTHER ORDERED** that Defendants Americas Loop, Tropicana Development and Tropicana Homes file notice with the Court, advising the Court that arbitration has been completed by the parties, and providing the Court with a copy of the disposition thereof, within **ten (10) days** of the issuance of an arbitration award.

    **SO ORDERED.**

    **SIGNED** on this 28th of January, 2010.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE