**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **COUNTY OF EL PASO, TEXAS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-09-CV-119-KC** |
| | § | |
| **LUTHER JONES, et al.,** | § | |
| | § | |
| **Defendants**. | § | |

## ORDER

On this day, the Court considered Defendant Escobar's Motion for Partial Dismissal for Want of Prosecution, ECF No. 229, in the above-captioned case. For the reasons set forth below, Defendant Escobar's Motion is **DENIED**.

Additionally, pursuant to this Court's previous Order of January 28, 2010, ECF No. 198, in which the Court granted Defendants' Motion to Compel Arbitration, ECF No. 180, which Defendant Escobar had adopted and joined in his Response in Support, ECF No. 183, Plaintiff and Defendant Escobar are once again **ORDERED** to participate in binding arbitration under the terms of the parties' arbitration agreement. *See* Defs.' Mot. to Compel Arbitration, Ex. B ("Rule 11 Agreement") ¶ 6, ECF No. 180-2. Until the conclusion of the arbitration, this case will remain **STAYED** in its entirety. Finally, as a purely organizational measure, this case will be **ADMINISTRATIVELY CLOSED** unless and until a party moves to reopen the case.

## I.    BACKGROUND[1]

Pursuant to this Court's Order of January 28, 2010, this case has been stayed for the past

---

[1] Because many of the exhibits in the record lack page numbers of their own or are not numbered consecutively, this Order refers to the page numbers supplied at the top of each page of the record by the electronic docketing system. For the purposes of this Order, this convention is applied to all the parties' filings in this case, including the parties' pleadings, motions, and briefs.

three years.  As the parties were preparing to resume litigation, Defendant Escobar filed the

instant Motion.  *See, e.g.*, Def. Escobar's Mot.; Joint Status Report, ECF No. 222; Joint Report

of Parties' Planning Meeting, ECF No. 225.  Because the parties have now made several

arguments regarding the proper interpretation of the Court's Order of January 28, 2010, the

Court will briefly revisit the two independent grounds upon which that Order was based.  First,

this Court ordered that this case should be stayed pending the arbitration of matters within the

scope of the Rule 11 Agreement, to which certain parties to this litigation were signatories.

Second, this Court ordered that this case should be stayed until the conclusion of certain criminal

proceedings.

> **A.      Stay of this Case Pending Arbitration**

On December 18, 2009, three Defendants in this case filed a Motion to Compel

Arbitration of disputes falling within the scope of the Rule 11 Agreement.  *See* Defs.' Mot. to

Compel Arbitration.  As these three Defendants recounted in their Motion to Compel Arbitration,

the County Court at Law No. 7 had previously issued an Order on May 27, 2009, compelling

arbitration in a parallel state suit involving several of the parties to the federal lawsuit before this

Court, one of whom was Defendant Escobar.  *See* Defs.' Mot. to Compel Arbitration 5; *see also*

*id.*, Ex. C ("State Court's Order"), ECF No. 180-3.  The State Court's Order had referred "all

matters in dispute between all parties" in the parallel state suit "for resolution by binding

arbitration" in accordance with the Rule 11 Agreement.[2]  *See* State Ct.'s Order.  The phrase used

in the State Court's Order, "all matters in dispute between all parties," necessarily included all

---

[2] The State Court's Order did not explicitly identify the arbitration clause in the Rule 11 Agreement as the basis for the referral of these matters to arbitration but, notably, all of the parties to the parallel state suit were also signatories to the Rule 11 Agreement.  *Compare* Rule 11 Agreement 2, 5, *with* State Ct.'s Order 1.  Moreover, the three Defendants who filed the Motion to Compel Arbitration in this case contended that the State Court's Order was based on the arbitration clause in the Rule 11 Agreement, and this contention has never been contradicted by Plaintiff.  *See* Defs.' Mot. to Compel Arbitration 5.

claims raised by Plaintiff in the parallel state suit against Defendant Escobar. *See id.* In their Motion to Compel Arbitration filed in this Court, the three moving Defendants requested that all matters before this Court that also fell within the scope of the Rule 11 Agreement likewise "be arbitrated in the same arbitration process that has already been ordered in the State Court Action" in accordance with "the rules of comity and to avoid the trial of the same issues in multiple forums . . . ." Defs.' Mot. to Compel Arbitration 6.

Although Defendant Escobar was not originally a party to the Motion to Compel Arbitration filed by his three fellow Defendants in the federal lawsuit before this Court, Defendant Escobar had been a signatory to the Rule 11 Agreement and a party to the parallel state suit in which "all matters in dispute between all parties" had been referred to arbitration. *See* Rule 11 Agreement 2, 5; State Ct.'s Order 1. On December 21, 2009, Defendant Escobar filed with this Court a supplemental Response in Support, in which he "adopt[ed] and join[ed]" his fellow Defendants' Motion to Compel Arbitration under the Rule 11 Agreement, which Defendant Escobar explicitly "incorporated by reference" into his Response in Support. *See* Def. Escobar's Resp. in Supp. 2.

Plaintiff then filed its own Response on January 8, 2010, in which Plaintiff raised four arguments in opposition to Defendants' Motion to Compel Arbitration. Pl.'s Resp. to Defs.' Mot. to Compel Arbitration, ECF No. 193. In that Response, Plaintiff explicitly acknowledged that Defendant Escobar had adopted and joined Defendants' Motion to Compel Arbitration. *Id.* at 4-5, 10. However, Plaintiff made no objection to Defendant Escobar's adoption of the Motion to Compel Arbitration, and none of Plaintiff's four arguments in opposition related specifically to the prospect of arbitrating Plaintiff's claims against Defendant Escobar. *See id.* at 5-11. Rather, much like the State Court's Order of May 27, 2009, which referred "all matters in

3

dispute between all parties" to arbitration, Plaintiff made no distinction between the applicability of the arbitration clause to Plaintiff's claims against Defendant Escobar and the applicability of the arbitration clause to Plaintiff's claims against any other Defendant.  *See id.*; State Ct.'s Order.

On January 28, 2010, after due consideration of Plaintiff's arguments in opposition, this Court granted Defendants' Motion to Compel Arbitration.  *See* Order of January 28, 2010.  This Order did not explicitly refer to Defendant Escobar's adoption of the Motion to Compel Arbitration in his Response in Support, although the Court did observe that the Rule 11 Agreement had been "signed by . . . [Defendant] Escobar, Counsel for the Assignees of Catalina Development . . . ."  *See id.* at 4-13.  Much like the State Court's Order of May 27, 2009, this Court's Order of January 28, 2010, made no distinction between the applicability of the arbitration clause to Plaintiff's claims against Defendant Escobar and the applicability of the arbitration clause to Plaintiff's claims against any other Defendant.  *See id.*; State Ct.'s Order 1. Accordingly, the Court ordered "the above-captioned cause STAYED as to all Defendants . . . pending the arbitration pursuant to the arbitration clause contained in Defendants' Rule 11 Agreement with [Plaintiff]."  Order of January 28, 2010.

## B.    Stay of this Case During Certain Criminal Proceedings

In its Order of January 28, 2010, this Court also ruled that this case should be stayed "as to all Defendants, pending the resolution of the related criminal matters with respect to Defendant Luther Jones . . . ."  *See id.* at 14.  This second and independent basis for the stay resulted in part from the Court's conclusion that "[f]orcing Jones to submit to discovery requests during the pendency of the criminal investigation and trial" created the potential for violations of Defendant Jones' "Fifth Amendment right 'not to answer official questions put to him in any [civil] proceeding . . . where the answers might incriminate him in future criminal proceedings.'"

4

*Id.* at 3 (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)).  Accordingly, the Court ruled that "[t]he above-captioned cause will resume only after both the related criminal trial and the arbitration have ended."  *Id.* at 14.

Nearly three years later, on September 24, 2012, Defendants—including Defendant Escobar—jointly urged the Court not to lift the stay imposed in its Order of January 28, 2010, until the conclusion of criminal proceedings against Defendant Jones.  *See* Joint Status Report 1. Defendants reaffirmed their understanding that Defendant Jones' "Fifth Amendment privilege is still likely to prevent any other party from obtaining discovery from him" during the ongoing criminal proceedings against him.  *See id.*

Additionally, Defendants—including Defendant Escobar—jointly advised the Court on two occasions that other criminal proceedings pending against other Defendants also justified leaving the Court's three-year-old stay in place.  In Defendants' collective view, "[i]n addition to Mr. Jones's case, the still-pending federal criminal cases against [Defendant] Flores and [Defendant] Escobar (both still pending sentencing) may hamper or preclude active discovery efforts . . . ."  *Id.* at 2; Joint Report of Parties' Planning Meeting 3 ("Defendants Flores and Escobar may or may not still exercise Fifth Amendment privileges as to evidence that may implicate them . . . .").  As stated explicitly in the Joint Status Report of September 24, 2012, "[t]he Defendants' position is that they are not at this moment able to meaningfully proceed, pending final resolution of the various criminal proceedings."  Joint Status Report 2.

### C.    Defendant Escobar's Motion for Partial Dismissal

On January 28, 2013, Defendant Escobar filed a Motion for Partial Dismissal for Want of Prosecution, because Plaintiff had not yet initiated arbitration against Defendant Escobar during the three years since this Court granted Defendants' Motion to Compel Arbitration on January

28, 2010.  *See* Def. Escobar's Mot., ECF No. 229.  In its Response, Plaintiff argues that its

failure to initiate arbitration should be excused because meaningful discovery would have been

impossible during the pendency of criminal proceedings against Defendant Escobar.  Pl.'s Resp.

9-10, ECF No. 231.  Because, in Plaintiff's view, "the arbitration requirement" imposed by the

Rule 11 Agreement "also applies to Defendant Escobar," Plaintiff now asks this Court to deny

Defendant Escobar's Motion for Partial Dismissal and "order [Plaintiff] and [Defendant] Escobar

to proceed to arbitration" in accordance with this Court's Order of January 28, 2010.  *Id.* at 8, 12.

## II.   DISCUSSION

### A.   Standard

Under Rule 41(b) of the Federal Rules of Civil Procedure, "[i]f the plaintiff fails to

prosecute or to comply with these rules or a court order, a defendant may move to dismiss the

action or any claim against it."  Fed. R. Civ. P. 41(b).  The district courts' authority to grant such

a motion, or to dismiss a case sua sponte for failure to prosecute, results from the "courts' power

to manage and administer their own affairs to ensure the orderly and expeditious disposition of

cases."  *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1190-91 (5th Cir. 1992) (quoting *Link v.

Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).

"[W]here the dismissal is without prejudice, but the applicable statute of limitations

probably bars further litigation," then a district court should weigh the option of dismissal using

the same analysis "as is used when reviewing a dismissal with prejudice."  *See Millan v. USAA

Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008) (quoting *Boazman v. Econ. Lab., Inc.*, 537

F.2d 210, 213 (5th Cir. 1976)); *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 417 (5th Cir.

2006); *Berry*, 975 F.2d at 1191.  Such dismissal is generally warranted only where "a clear

record of delay or contumacious conduct by the plaintiff" exists and "lesser sanctions would not

6

prompt diligent prosecution." *Stearman v. Comm'r of Internal Revenue*, 436 F.3d 533, 535 (5th Cir. 2006); *Tello v. Comm'r of Internal Revenue*, 410 F.3d 743, 744 (5th Cir. 2005).

The United States Court of Appeals for the Fifth Circuit has usually affirmed dismissals with prejudice for failure to prosecute only where at least one of the following three "aggravating factors" has been present: "(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." *See Millan*, 546 F.3d at 326-27; *Stearman*, 436 F.3d at 535; *Tello*, 410 F.3d at 744.  "[I]t is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead, it is 'the stubborn resistance to authority' which justifies a dismissal with prejudice." *Millan*, 546 F.3d at 327; *Stearman*, 436 F.3d at 537.  "[S]uch a sanction is reserved for the most egregious of cases . . . ." *Sealed Appellant*, 452 F.3d at 418 n.4 (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982)).

## B.    Analysis

In this case, Defendant Escobar himself has taken the position that Plaintiff's claim of civil conspiracy is "governed by a two-year statute of limitations." *See* Def. Escobar's Reply 6, ECF No. 232 (citing *Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001)).  Accordingly, since this case has been stayed for three years and "the applicable statute of limitations probably bars further litigation," granting Defendant Escobar's Motion under Rule 41(b) would effectively constitute a dismissal with prejudice.  *See Millan*, 546 F.3d at 325-26; *Berry*, 975 F.2d at 1191.  Defendant Escobar's Motion therefore must be analyzed using the factors described by the Fifth Circuit in *Millan* and *Berry*.  Based on this analysis and as explained in further detail below, the Court finds no justification for dismissal of this case. Plaintiff's conduct has not been contumacious, the delay has been motivated by caution as to

7

Defendant Escobar's constitutional privilege against self-incrimination, and Defendant Escobar has not demonstrated actual prejudice from this delay.

### 1.    Length of the delay

Seeking to demonstrate that Plaintiff's conduct has been contumacious, Defendant Escobar has drawn this Court's attention to three previous cases where litigants, upon being ordered to arbitrate and failing to initiate arbitration for long periods of time, have been sanctioned by district courts with dismissal for failure to prosecute under Rule 41(b).  *See* Def. Escobar's Mot. 5 (citing *James v. McDonald's Corp.*, 417 F.3d 672, 681 (7th Cir. 2005); *Russell v. Volt Corp.*, No. 1:11-CV-915, 2012 WL 6156111, at *2 (W.D. Tex. Dec. 11, 2012), *adopted by* Order on Report & Recommendation, No. 1:11-CV-915 (W.D. Tex. Jan. 29, 2013); *Gonino v. Unicare Life & Health Ins.*, No. 3:02-CV-2501, 2005 WL 608158, at *2 (N.D. Tex. Mar. 16, 2005)).  In particular, Defendant Escobar emphasizes that the periods of delay prior to initiating arbitration in these three previous cases were shorter than the period of delay in this case.  *See* Def. Escobar's Mot. 5 (noting that the longest of these periods of delay was nineteen months).

The length of the delay, however, is at most a secondary consideration when assessing contumacious conduct under Rule 41(b).  In *Thomas v. Bear, Stearns & Co.*, for example, where a plaintiff delayed for more than thirty months before commencing arbitration, the United States District Court for the Northern District of Texas declined to dismiss the case for failure to prosecute because it was "not pellucid that [the plaintiff's] conduct in this respect has been the result of purposeful delay or contumaciousness."  *Thomas v. Bear, Stearns & Co., Inc.*, No. 3:93-CV-1970, 1996 WL 706871 (N.D. Tex. Dec. 4, 1996).  Importantly, the decisions interpreting Rule 41(b) have never emphasized the length of delay as a critical factor in determining whether a case should be dismissed.  Rather, as the Fifth Circuit has explained, "it is not a party's

8

negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead, it is 'the stubborn resistance to authority' which justifies a dismissal with prejudice." *Millan*, 546 F.3d at 327; *Stearman*, 436 F.3d at 537.  This Court will not, therefore, assess whether Plaintiff's conduct merits dismissal in this case based on the length of delay alone.

### 2.   Contumacious conduct

Upon closer examination of the cases cited by Defendant Escobar, it is apparent that each of the plaintiffs in those cases demonstrated the "stubborn resistance to authority" that is indicative of contumacious conduct.  *See Millan*, 546 F.3d at 327; *Stearman*, 436 F.3d at 537.  In the *James* case, the plaintiff "continue[d] submitting arguments that the district court already had determined were meritless" as grounds for resisting arbitration, and failed "to pursue promptly the [district] court's reconsideration, or [the appellate court's] review on interlocutory appeal," long after the district court had issued the order to participate in arbitration.  *James*, 417 F.3d at 681.  Similarly, in *Russell*, the plaintiff failed to appear at a show-cause hearing, misrepresented his intention to appeal the court's Order during a second show-cause hearing, ignored the district court's offer of assistance in selecting a neutral arbitrator, and ignored the court's warning that "this is the Plaintiff's last chance to comply with the order to arbitrate this dispute."  *Russell*, 2012 WL 6156111, at *1-2.  In *Gonino*, finally, the plaintiff failed to offer any "substantive excuse for the prolonged dormancy" of his case during the nineteen months after the plaintiff was ordered to commence arbitration.  *Gonino*, 2005 WL 608158, at *3.

By contrast, there is no evidence of such "stubborn resistance to authority" in this case.  *See Millan*, 546 F.3d at 327; *Stearman*, 436 F.3d at 537.  Plaintiff has never attempted to revive arguments rejected by this Court's previous Orders.  Plaintiff has not ignored any warnings by

this Court regarding possible sanctions, nor failed to cooperate with the deadlines imposed by the Court during this phase of the case.  Nor has Plaintiff argued that it should not comply with this Court's Order of January 28, 2010, and participate in arbitration.  Indeed, Plaintiff now requests that this Court once again "order [Plaintiff] and [Defendant] Escobar to proceed to arbitration" before the litigation of this case is resumed.  Pl.'s Resp. 12.  Plaintiff has also provided a legitimate "substantive excuse" for the three-year delay of arbitration, which sufficiently distinguishes Plaintiff's case from the inexplicably "prolonged dormancy" described in *Gonino*. *See Gonino*, 2005 WL 608158, at *3.  That is, the delay in this case appears to have been motivated by caution regarding Defendant Escobar's rights under the Fifth Amendment "not to answer official questions put to him in any [civil] proceeding . . . where the answers might incriminate him in future criminal proceedings."  *See Lefkowitz*, 414 U.S. at 77.  As Plaintiff explains, "[n]ow that the criminal proceedings have concluded, the parties are in a position to pursue the arbitration.  Prior to this moment, they were in no position to do so."  Pl.'s Resp. 10.

In response, Defendant Escobar appears to criticize "Plaintiff's assumption that discovery would be unavailing," but gives the Court no reason to doubt that assumption.  *See* Def. Escobar's Reply 7.  Indeed, this "assumption" was apparently shared by Defendant Escobar himself until very recently.  Defendant Escobar has informed this Court several times that he would not be in a position to cooperate with civil discovery so long as criminal proceedings remained pending against him.  On September 24, 2012, Defendant Escobar and his two remaining fellow Defendants communicated their position that "they [we]re not at this moment able to meaningfully proceed, pending final resolution of the various criminal proceedings." Joint Status Report 2.  In Defendants' collective view, "[i]n addition to Mr. Jones's case, the still-pending federal criminal cases against [Defendant] Flores and [Defendant] Escobar (both

10

still pending sentencing) may hamper or preclude active discovery efforts . . . ." *Id.* at 2.  As recently as November 16, 2012, Defendant Escobar considered it possible that he might "still exercise Fifth Amendment privileges as to evidence that may implicate" him in the criminal proceedings pending against him.  Joint Report of Parties' Planning Meeting 3.

Therefore, this is not a case where there has been "a clear record of delay or contumacious conduct by the plaintiff" or where "lesser sanctions would not prompt diligent prosecution." *Stearman*, 436 F.3d at 535; *Tello*, 410 F.3d at 744.  As Defendant has conceded, diligent prosecution has been impeded during the pendency of criminal proceedings closely related to this case.  *See* Joint Status Report 2.  Therefore, Plaintiff's inability to pursue arbitration cannot fairly be held against it.

### 3.    Aggravating factors

Nor are any of the Fifth Circuit's "aggravating factors," as described in *Millan* and *Stearman*, present in this case.  That is, there is no evidence that this delay was caused by "plaintiff himself," that this delay inflicted "actual prejudice to the defendant," or that this delay was caused by "intentional conduct."  *Millan*, 546 F.3d at 326; *Stearman*, 436 F.3d at 535.  On the contrary, this delay appears to have resulted from the expectation that Defendant Escobar might justifiably decide to invoke his Fifth Amendment rights while criminal proceedings have been pending against him.  *See* Joint Status Report 2; Joint Report of Parties' Planning Meeting 3.  This delay, therefore, can neither be attributed to Plaintiff itself nor to "intentional conduct" by Plaintiff's counsel.  *See Millan*, 546 F.3d at 326; *Stearman*, 436 F.3d at 535.

Finally, the Court finds that the delay has not inflicted actual prejudice upon Defendant Escobar, but has actually benefited him by helping him to mount an effective defense in the arbitration without jeopardizing his Fifth Amendment privilege against self-incrimination.  As

11

other district courts have found, "while it is unquestioned that . . . individual [litigants] may assert their privileges in [an] arbitration, it is equally clear that adverse inferences may be drawn against them should they do so." *Beacon Hill Asset Mgmt. LLC v. Asset Alliance Corp.*, No. 03-CV-1560, 2003 WL 1845208 (S.D.N.Y. Mar. 25, 2003) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).  Accordingly, where an arbitrator has drawn adverse inferences from a party's invocation of the Fifth Amendment during arbitration, these adverse inferences—without more—can provide "no grounds for vacating the arbitration award." *See Swenson v. Bushman Inv. Properties, Ltd.*, 870 F. Supp. 2d 1049, 1064-65 (D. Idaho 2012).  Indeed, arbitration is no different in this respect from any other civil proceeding, because "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . ." *Baxter*, 425 U.S. at 318; *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 762 F. Supp. 2d 942, 1017 (S.D. Tex. 2010).

In this case, therefore, the three-year delay has actually protected Defendant Escobar from the difficult choice "between the negative inferences drawn from [his] silence in a civil case and [his] Fifth Amendment privilege." *See United States ex rel. Gonzalez v. Fresenius Med. Care N.A.*, 571 F. Supp. 2d 758, 764 (W.D. Tex. 2008).  While Defendant Escobar has argued vaguely that "[w]itnesses' memories have certainly faded" and "documents may have been lost," these potential consequences of the stay are no more likely to prejudice Defendant Escobar than they might prejudice Plaintiff's case in chief.  *See* Def. Escobar's Mot. 5. Similarly, although Defendant Escobar correctly observes that "at least one of the individuals Plaintiff sued in this Court in connection with this transaction, [Defendant] Thomas, has passed away," Defendant Escobar offers no explanation as to why Defendant Thomas's testimony or participation would be crucial to Defendant Escobar's ability to mount a defense.  *See id.*

12

Without further proof or a more specific explanation as to how Defendant Escobar's case has been undermined by the passage of time, the Court sees no basis for a finding of "actual prejudice."  *See Millan*, 546 F.3d at 326; *Stearman*, 436 F.3d at 535.

Therefore, in the absence of "a clear record of delay or contumacious conduct by the plaintiff," this Court will not exercise its discretion to dismiss this case under Rule 41(b) of the Federal Rules of Civil Procedure.  *Stearman*, 436 F.3d at 535; *Tello*, 410 F.3d at 744. Defendant's Motion is therefore **DENIED**.

Additionally, the Court observes that the requirement that the parties participate in binding arbitration, as set forth in the Order of January 28, 2010, remains in effect.  Plaintiff and Defendant Escobar are therefore **ORDERED** to initiate arbitration and to file a Joint Status Report with the Court within ten days following the conclusion of the arbitration by the rendering of an arbitral award or the negotiation of an agreed settlement.

### C.     Administrative Closure

Finally, as a purely organizational measure, the Court also finds that this case should be administratively closed during the pendency of the stay now in force.  "[A]dministrative closure reflects nothing more than the federal courts' overarching concern with tidy dockets; it has no jurisdictional significance."  *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 714-15 (5th Cir. 2002) (Dennis, J., concurring); *see also Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 392 (1st Cir. 1999).

This administrative closure does not prevent any party "from restoring the action to the Court's active calendar upon an appropriate application."  *Lehman*, 166 F.3d at 392 (quoting *In re Arbitration Between Phila. Elec. Co. v. Nuclear Elec. Ins. Ltd.*, 845 F. Supp. 1026, 1028

13

(S.D.N.Y. 1994)).  Accordingly, unless and until a party moves otherwise, this case will be **ADMINISTRATIVELY CLOSED**.

III.    **CONCLUSION**

For the reasons stated above, Defendant Escobar's Motion for Partial Dismissal for Want of Prosecution, ECF No. 229, is **DENIED**.

**IT IS FURTHER ORDERED**, pursuant to this Court's Order of January 28, 2010, ECF No. 198, that Plaintiff and Defendant Escobar will participate in binding arbitration under the terms of the parties' arbitration agreement.

**IT IS FURTHER ORDERED** that, until the conclusion of the arbitration, this case will remain **STAYED** in its entirety.

**IT IS FURTHER ORDERED** that, within ten days following the conclusion of the arbitration, or the conclusion of any settlement agreement between any remaining parties to this case, the parties will provide the Court with a Joint Status Report regarding all material developments in this case.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED** as moot.

**IT IS FURTHER ORDERED** that, unless and until a party moves otherwise, this case will be **ADMINISTRATIVELY CLOSED**.

The clerk shall administratively close the case.

**SO ORDERED**.

**SIGNED this 31st day of May, 2013.**

_Kathleen Cardone_
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

14